**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2003-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHNATHAN L. CHISOM,

    Defendant-Appellant.

_____

> Submitted September 13, 2018 – Decided September 24, 2018
>
> Before Judges Alvarez and Mawla.
>
> On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-11-1375.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Johnathan L. Chisom appeals from a September 16, 2016 judgment of conviction for second-degree eluding, N.J.S.A. 2C:29-2(b) (count one), fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3) (count two), and third-degree unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10(c) (count four). Defendant also appeals from his December 12, 2016 sentence to five years in prison for count one, which was merged with count two, and the three-year concurrent sentence for count four. We affirm.

The following facts are taken from the record. On August 19, 2014, defendant visited the residence of his girlfriend, the victim, in Sayreville. He had taken a cab to her home because his driver's license was suspended. Once there, the couple consumed more than one bottle of wine and defendant became intoxicated. Defendant discovered a text message on the victim's telephone from another man with whom he believed the victim was having an affair. An argument ensued, and the victim attempted to leave in her vehicle, but realized defendant had the key, which he refused to give her.

As a result, she left the residence on foot and began to walk down the street. Defendant followed her and the couple stopped on the property of Joseph DeFelice. There, according to the victim, defendant yelled at her to return home, grabbed her upper arm, and continued to accuse her of infidelity. When the

A-2003-16T4

victim refused to comply with defendant's demands, he jerked her body as if he intended to throw her into oncoming traffic, and pulled her pocketbook off and threw it across the street.

The victim ran across the street towards a house with its lights on. As she approached the house, she "felt a really hard push" from behind and fell to the ground. Defendant then grabbed her leg and began dragging her away as she tried to crawl backward. Defendant then grabbed her shirt and lifted her off the ground.

DeFelice testified he was at home watching television and heard the couple arguing. He observed the victim was sitting on his yard, with defendant standing over her. DeFelice asked them to "break it up" or he would contact the police. He called police and informed them there was a domestic dispute involving two individuals who were drunk.

DeFelice testified the couple then crossed the street, the victim was on the ground, and defendant was attempting to pick her up by her wrist. He described it like "a kid who doesn't want to get up, he's having a temper tantrum, you're trying to pick them up and just, like, yank them, let's go. Pretty much like that." DeFelice said defendant went into the street and retrieved a purse in the road, the couple walked away, and continued arguing.

3

Mark Turon was jogging in the neighborhood at the time. He testified he observed the victim walking with "a man stumbling back and forth behind her." He noted she appeared "panicked and terrified," and "was briskly walking ahead of the man." Turon continued his run, but returned and observed the couple from across the street. Turon testified he saw the victim "was with her bottom down, and [defendant] . . . he was shaking her, beating on her." Turon shouted at defendant to stop, crossed the street, and kept yelling at him to stop. As he approached defendant, Turon testified there was "a horrific smell of alcohol."

Turon testified he saw a man standing in the area, and told him to call the police. When police arrived, Turon testified defendant pushed him aside and ran. Turon chased after him, but did not find defendant.

Sayreville Police Officer George Lestuck was the first to arrive on scene. Officer Lestuck testified he recognized defendant from at least three prior meetings. He saw defendant walking away from the scene, and told him to stop, but instead defendant "took off." Officer Lestuck saw the victim on the ground and took her back to her house, while other officers searched the area for defendant. Officer Lestuck searched the house, but defendant was not there. Officer Lestuck advised the victim to stay with a friend for the night. After she

left with her friend, Officer Lestuck returned to the station to obtain an arrest warrant for defendant for assault.

Officers then contacted the local cab company to inquire if they had any calls for a pick-up in the area. Police asked the cab dispatcher to call if there were any such requests. At 10:56 p.m. the cab dispatcher notified police there had been a pick-up request near the victim's house. The caller ID showed the victim's name, but the caller's voice was male.

Officers Lestuck, Gabriel Lugo, and Anthony D'Onofrio took up positions around the neighborhood to stop the cab defendant had hailed. Officer Lugo, who had two prior contacts with defendant, testified he had parked his police cruiser on a corner a few blocks from the victim's home when he noticed defendant driving by in the victim's vehicle. Officer Lugo signaled the car to pull over, but the vehicle sped away.

Officer D'Onofrio, who joined the pursuit in a separate vehicle, also identified defendant as the driver of the vehicle. Officer D'Onofrio had at least two prior interactions with defendant.

The vehicle defendant was driving reached speeds of eighty miles per hour, drove through several red lights, crossed a dividing median, became airborne, and glanced off of an oncoming car. After hitting the oncoming car,

defendant continued fleeing, but the front right tire of the vehicle was flat. Therefore, the officers ceased the pursuit for safety reasons. The victim's vehicle was ultimately recovered abandoned in Perth Amboy.

Police issued a "be on the lookout" bulletin for defendant to neighboring towns. On August 20, 2014, at approximately 1:15 a.m., Woodbridge Police Officer Marc Sokolow saw defendant exiting a cab in Woodbridge. Officer Sokolow recognized defendant from a prior contact and placed him under arrest.

Following defendant's indictment, he was also charged with simple assault and criminal mischief, both disorderly persons offenses. Defendant filed a pre-trial motion to sever the disorderly persons offenses from the indictable offenses, which the trial judge denied. Defendant was tried and convicted by a jury on the indictable offenses. The trial judge acquitted him of the disorderly persons charges, and sentenced defendant accordingly. This appeal followed.

On appeal, defendant raises the following arguments:

> POINT I:
>
> THE JUDGE ERRED BY FAILING TO GRANT [DEFENDANT'S] MOTION FOR A SEPARATE TRIAL ON THE DISORDERLY PERSONS CHARGES RELATED TO THE EARLIER ARGUMENT, CREATING TREMENDOUS RISK OF UNDUE PREJUDICE IN [DEFENDANT'S] JURY TRIAL FOR THE LATER ELUDING.

A-2003-16T4

POINT II:

PROSECUTORIAL MISCONDUCT DURING THE TRIAL AND SUMMATION INTENDED TO REFRAME THE TRIAL INTO A VERDICT ON [DEFENDANT'S] CHARACTER DENIED [DEFENDANT] DUE PROCESS AND A FAIR TRIAL.

> A. The prosecutor intentionally elicited voluminous other-crimes evidence that was not relevant to any material issues concerning the charges before the jury.

> B. The prosecutor argued during summation that [defendant] had violated [the victim's] rights as a woman and emphasized her love for him.

POINT III:

THE JUDGE'S INSTRUCTIONS ON THE ACCEPTABLE USE OF THE OTHER—CRIMES EVIDENCE WERE INCOMPLETE AND CONFUSING, CREATING A GREAT RISK THE EVIDENCE WAS USED IMPROPERLY. (Not raised below)

POINT IV:

THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS DENIED [DEFENDANT] A FAIR TRIAL. (Not raised below)

POINT V:

THE TRIAL JUDGE SHOULD HAVE DOWNGRADED [DEFENDANT'S] SENTENCE TO THE THIRD-DEGREE RANGE BECAUSE THE

MITIGATING FACTORS SUBSTANTIALLY OUTWEIGHED THE AGGRAVATING FACTORS.

I.

Defendant argues the court should have severed the disorderly persons offenses of simple assault and criminal mischief from the indictable offenses tried by the jury. Defendant claims he was prejudiced because the jury heard testimony related to those charges, whereas the judge was the sole factfinder for the disorderly persons charges.

The State opposed defendant's motion to sever arguing the evidence of the disorderly persons charges was "intrinsic to the crime of eluding," which stemmed from the altercation. Defendant asserted the prior altercation was not necessary to prove motive, because defendant had stipulated to having a suspended license, which provided the motive to flee the police when they attempted to stop him while operating the victim's car. The trial judge determined while "it is a little cumulative in terms of the fact that we have the driving while suspended as a motive, . . . it makes it an even stronger case for motive, plan, intent, preparation, all of the allowable reasons that something comes in under 404(b)," and denied the motion.

A trial judge's decision to admit prior bad acts evidence will be upheld unless the decision is deemed to be an abuse of discretion. State v. Marrero,

148 N.J. 469, 483-84 (1997). Absent a showing of a mistaken exercise of discretion such as a "clear error of judgment," we will not disturb the trial court's decision. State v. Moorman, 286 N.J. Super. 648, 660 (App. Div. 1996). Evidence that is highly inflammatory may still be admitted where its probative value outweighs its prejudicial effect. See State v. Cusick, 219 N.J. Super. 452, 464-65 (App. Div. 1987) (admitting evidence defendant had previously sexually assaulted children, on the grounds such evidence was "extremely probative" to establish defendant's intent in a trial for the sexual assault of minors).

N.J.R.E. 404(b) prohibits the introduction of evidence showing a person committed other crimes, wrongs or bad acts in order to prove the disposition of the person to commit such acts. However, evidence of other crimes is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b).

> [I]n order to avoid the over-use of extrinsic evidence of other crimes or wrongs:
>
> > 1. The evidence of the other crime must be admissible as relevant to a material issue;
> >
> > 2. It must be similar in kind and reasonably close in time to the offense charged;

> 3. The evidence of the other crime must be clear and convincing; and

> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.

> [State v. Cofield, 127 N.J. 328, 338 (1992).]

Defendant argues the evidence was inadmissible and Cofield factors one, three, and four were not met. He asserts factor one was not met because the evidence was not necessary to prove motive, as he had stipulated to having a suspended license. As we noted, the trial judge found evidence of defendant's altercation with the victim provided support for "motive, plan, intent, preparation, all of the allowable reasons that something comes in under 404(b)," as defendant fled in the victim's car. Defendant's suspended license only provided support for motive. It was not an abuse of discretion for the trial judge to deny the motion under factor one.

Defendant argues factor three was not met because the trial judge had not heard any testimony prior to the decision to admit the evidence, but relied on the State's assurance it would offer three witnesses who saw defendant assault the victim. Defendant claims the only person who would testify to the assault was the victim. As such, he asserts the trial judge should have held an evidentiary hearing to determine whether the proffered testimony provided

10

"clear and convincing" evidence of the assault. Defendant argues because the trial judge acquitted him of the disorderly persons charges, and found the State's witnesses not credible, the evidence should not have been admitted.

The trial judge did not abuse her discretion by finding the disorderly persons charges were supported by clear and convincing evidence. There was probable cause to issue an arrest warrant for defendant after his altercation with the victim and before the car chase. Moreover, the victim and Turon's testimony of the assault, as we have recounted it, was clear and convincing evidence. Although the trial judge ultimately found their testimony not credible and acquitted defendant of the disorderly persons charges, the burden was beyond a reasonable doubt and therefore higher than the clear and convincing standard necessary to meet the third Cofield factor.

Defendant argues the fourth factor was not met because the evidence was more prejudicial than probative. We disagree.

The trial judge found the evidence was:

> [R]elevant to the issue of [defendant's] motive and his intent and even his preparation of why he did what he did. And it was certainly similar in time. . . . I don't think . . . the prejudice weighs heavier than the need for this information to explain the circumstances of what happened that evening.

We agree. The probative nature of the evidence and its potential to shed light on defendant's opportunity, intent, preparation, plan, knowledge, identity, and motive clearly outweighed any prejudicial effect. The judge's finding under the fourth factor was not an abuse of discretion and the decision to deny the motion to sever was not an error.

## II.

We turn next to defendant's contention the prosecutor exceeded the bounds of proper advocacy by presenting the evidence of the disorderly persons offenses in the jury trial. Defendant asserts the prosecutor's purpose of arguing the other crimes was "to portray [defendant] as a bad person who runs away from the police." Specifically, defendant notes the victim was allowed to testify to her "fear, panic, and injury [defendant] had caused her," and testified "[defendant] tried to shove her into traffic." Defendant argues Turon was permitted to testify the victim was "terrified," and permitted to opine on defendant's level of intoxication using Turon's Russian and Polish heritage, which Turon stated enabled him to determine defendant's inebriated state. Defendant further argues the prosecutor elicited testimony from Officer D'Onofrio that defendant had previously been implicated in other criminal

interactions at the victim's home. Also, defendant claims the prosecutor made prejudicial comments in summation by referencing women's rights.

At the outset, we note defendant failed to object to the testimony regarding the other crimes during the trial. When a defendant fails to object to testimony at trial, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Under the plain error standard, "defendant has the burden to show that there is an error, that the error is 'clear' or 'obvious,' and that the error has affected 'substantial rights.'" State v. Chew, 150 N.J. 30, 82 (1997) (quoting and ruling "[o]ur law is the same" as United States v. Olano, 507 U.S. 725, 734 (1993)).

"[W]hen counsel does not make a timely objection at trial, it is a sign 'that defense counsel did not believe the remarks were prejudicial.'" State v. Pressley, 232 N.J. 587, 594 (2018) (citation omitted). "Defendant's lack of objections . . . weighs against defendant's claim that errors were 'clear' or 'obvious.' Indeed, '[i]t [is] fair to infer from the failure to object below that in the context of the trial the error was actually of no moment.'" State v. Nelson, 173 N.J. 417, 471 (2002) (alterations in original) (citation omitted).

Officer D'Onofrio's testimony that he knew defendant from prior brief interactions was limited, and was central to proving the eluding offense and the officer's identification of defendant as the driver of the vehicle. Moreover, the admission of this testimony and the facts surrounding the disorderly persons offenses were not error because the trial judge instructed the jury to not treat the testimony as evidence of other convictions or arrests. Additionally, defense counsel's objection to Turon's testimony regarding defendant's state was sustained.

We turn to defendant's assertions of prosecutorial misconduct in summations. The following occurred during the prosecutor's summation:

> [PROSECUTOR]: Ladies and gentlemen, a woman has a right to walk out of her house when she wants. A woman has a right to walk away from somebody she's upset with or someone who is bothering her. A woman has a right to walk on the street without being harassed or followed. A woman has a right not to be dragged, pushed down, pulled, held —
>
> [DEFENSE COUNSEL]: Objection.

As a result of defense counsel's objection, the trial judge stated she did not "want to go too much further talking about women's rights. I mean, I know the point of it but we don't want that to be the focus of this case." The prosecutor then resumed summation and stated:

14

Ladies and gentlemen, a woman has a right not to be restrained by someone else. And this defendant knew that those – that that's what the real world expectations were. And as a result of that, he knew that what he was doing out there was wrong, and he knew that he wasn't going to take responsibility for what he was doing out there.

Defendant did not renew his objection and the remainder of the prosecutor's summation addressed the evidence relating to the eluding offense.

In considering this issue, we note "[p]rosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999) (citations omitted). Prosecutors "are duty-bound to confine their comments to facts revealed during the trial and reasonable inferences to be drawn from that evidence." Id. at 85 (citation omitted). "In determining whether prosecutorial misconduct is prejudicial and denied defendant a fair trial, [courts] consider whether defense counsel made a timely and proper objection, whether the remark was withdrawn promptly, and whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." State v. Ramseur, 106 N.J. 123, 322-23 (1987) (citing State v. Bogen, 13 N.J. 137, 141-42 (1953)).

During summation a prosecutor may not "make inaccurate legal or factual assertions[.]" Frost, 158 N.J. at 85. Also, "'[a] prosecutor is not permitted to cast unjustified aspersions' on defense counsel or the defense." Id. at 86 (citations omitted). Prosecutorial "misconduct does not warrant reversal unless it is 'so egregious that it deprived the defendant of a fair trial.'" State v. Jackson, 211 N.J. 394, 409 (2012) (quoting Frost, 158 N.J. at 83). "To warrant reversal on appeal, the prosecutor's misconduct must be 'clearly and unmistakably improper' and 'so egregious' that it deprived defendant of the 'right to have a jury fairly evaluate the merits of his defense.'" Pressley, 232 N.J. at 593-94 (citation omitted).

Given the wide latitude afforded the prosecutor in presenting summations, the summation here did not mislead or prejudice the jury or the outcome. Rather, the prosecutor's argument intended to describe defendant's motive for eluding police after he assaulted the victim. Moreover, the prosecutor's remarks were limited and contained within a much broader summation, whose message had no relationship to women's rights.

### III.

Defendant argues the trial judge erred by not providing a limiting instruction regarding the other-crimes evidence prior to the admission of the

testimony. He also argues the charging instruction given to the jury before deliberation was incomplete and confusing. Specifically, he asserts the charging instruction was confusing, unclear, and utilized terms such as "consciousness of guilt," "flight," and "scene of the altercation" without defining the terms or explaining the nature of the altercation. Defendant also argues the charge should have instructed the jury it could only consider the other-crimes evidence to prove motive.

Again, we note defendant did not seek a limiting instruction before the admission of the other-crimes evidence, and did not object to the jury charge given to the jury. Therefore, we review his arguments subject to the plain error standard.

We have stated:

> [I]n addition to its inclusion in the final jury charge, a prompt delivery of limiting instructions, either before, simultaneously with, or immediately after, the admission of other crimes evidence is preferable, and — unless there is some compelling reason to do otherwise — should be standard procedure followed by trial courts in all cases.
>
> [State v. Angoy, 329 N.J. Super. 79, 89-90 (App. Div. 2000).]

The Supreme Court has stated: "instructions should be timely given both when the evidence is admitted and in the final charge." State v. Gillispie, 208 N.J. 59,

17

93 (2011) (citation omitted). Notably, the failure to give the instruction in either case was not determined to be plain error. See ibid. and Angoy, 329 N.J. at 89.

Defendant has not demonstrated how he was prejudiced due to the lack of a jury instruction before the admission of the other-crimes evidence. For these reasons, we decline to conclude the lack of such an instruction here was reversible error.

In her closing instructions to the jury, the trial judge said the following:

> The State has introduced evidence of an altercation between the defendant and [the victim] shortly before the crimes charged. Normally such evidence is not permitted under our Rules of Evidence. Our rules specifically exclude evidence that the defendant may have committed other crimes, wrongs or acts when it is offered only to show that he has a disposition or tendency to do wrong and therefore must be guilty of the charges, the offenses charged.
>
> Before you give any weight to that evidence, you must be satisfied that the defendant fled from the scene of the altercation. If you are not so satisfied, you may not consider it for any purpose.
>
> However, our rules do permit evidence of other crimes, wrongs or acts when the evidence is used for certain specific narrow purposes. In this case, the State has introduced this evidence to show that the defendant's consciousness of guilt in a prior altercation gave rise to a motive to commit the charged offenses.
>
> Here the evidence has been offered to attempt to convince you that the defendant's involvement in the

altercation and the flight therefrom is evidence of the defendant's motive to elude the police and resist arrest. You may not draw this inference unless you conclude that the acts alleged were motive to engage in the crimes charged in the indictment.

When we assess jury instructions, the charge must be read as a whole. State v. Martini, 187 N.J. 469, 477 (2006). "[A] court should not state generally the content of N.J.R.E. 404(b), but should 'state specifically the purposes for which the evidence may be considered and, to the extent necessary for the jury's understanding, the issues on which such evidence is not to be considered.'" Gillispie, 208 N.J. at 92 (quoting State v. Fortin, 162 N.J. 517, 534 (2000) (quoting State v. Stevens, 115 N.J. 289, 309 (1989))).

Here, the jury instruction was understandable and neither confusing nor in need of further definitional terms. Moreover, the instruction explained the other-crimes evidence was for the purpose of proving motive, and nothing more. The instruction followed the model jury charge for Rule 404(b), which advises the trial judge to "[d]escribe the limited purpose, relevant to a genuine, disputed issue, for which the evidence has been introduced, and explain specifically how that limited purpose relates to the facts of the case." Model Jury Charge (Criminal), "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b))" (rev. Sept. 12, 2016). Here, the instruction explained the other-crimes evidence could

19

be used only for the limited purpose of establishing motive to commit the eluding offense. Defendant has not demonstrated the jury charge prejudiced him on account of the jury's inability to understand it.

## IV.

Defendant argues the cumulative effect of the errors at trial undermined his constitutional rights to due process and a fair trial. However, we are satisfied that none of the errors alleged by defendant, individually or cumulatively, warrant the granting of a new trial. State v. T.J.M., 220 N.J. 220, 238 (2015); State v. Orecchio, 16 N.J. 125, 129 (1954).

## V.

Finally, defendant argues the trial judge should have downgraded his sentence from second-degree eluding to a third-degree offense because the mitigating factors substantially outweighed the aggravating factors. We disagree.

It is well settled that when reviewing a trial court's sentencing decision, "[a]n appellate court may not substitute its judgment for that of the trial court." State v. Johnson, 118 N.J. 10, 15 (1990) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). However, an appellate court may review and modify a sentence when the trial court's determination was "'clearly mistaken.'" State v. Jabbour,

118 N.J. 1, 6 (1990) (internal quotation marks omitted) (quoting State v. Jarbath,

114 N.J. 394, 401 (1989)).  Within these limitations, an appellate court can:

> (a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience.
>
> [State v. Evers, 175 N.J. 355, 387 (2003) (citation omitted).]

Moreover,

> The [New Jersey Code of Criminal Justice] provides that a sentencing court
>
> shall deal with a person who has been convicted of a crime of the first or second degree by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others.
>
> [Id. at 388 (citation omitted).]

"Absent a proper finding of 'serious injustice' that outweighs the need for general

deterrence, a trial court must impose a custodial sentence."  Ibid. (citation

omitted).

In deciding whether the "character and condition" of a defendant meets the "serious injustice" standard, a trial court should determine whether there is clear and convincing evidence that there are relevant mitigating factors present to an <u>extraordinary</u> degree and, if so, whether cumulatively, they so greatly exceed any aggravating factors that imprisonment would constitute a serious injustice overriding the need for deterrence[]

. . . .

. . . that a particular defendant is distinguished from the "heartland" of cases for the particular offense.

[Id. at 393-94.]

Here, at sentencing, the judge found aggravating factors three (risk that the defendant will commit another offense) and nine (need for deterring the defendant and others) applied. The judge found mitigating factors six (defendant has compensated or will compensate the victim), seven (defendant has no history of delinquency), nine (character and attitude of defendant indicate that he is unlikely to commit another offense), and ten (defendant is particularly likely to respond affirmatively to probationary treatment) applied.

Defendant argued for a downgrade, but the judge declined, finding the aggravating and mitigating factors were balanced. Specifically, the judge stated:

Now I know that defense counsel is arguing . . . it would be a serious injustice to sentence [defendant] to prison and that the [c]ourt should . . . at least look at a degree

22

below what he was found guilty of when determining his sentence.

> And while every person is special in their own way, this is not the type of unique situation. He had some tough years. He had a . . . bad breakup. He got hooked on . . . alcohol and drugs. And that is sadly a very common thing in this day and age.

> . . . He may have PTSD . . . and that's something that has perhaps gone unaddressed for a lot of years, but it doesn't rise to the level of making him such a unique circumstance that it would be a serious injustice to put him in jail.

On appeal defendant claims the court erred by not considering all the mitigating factors supported by the evidence, namely, defendant's veteran status, employment, his efforts towards substance abuse recovery, and the poor health of his mother. Our review of the record reveals the judge considered these mitigating factors defendant now raises on appeal. The trial judge balanced these factors against the rather serious nature of defendant's offense and other aggravating factors we have noted. For the reasons stated by the trial judge in her thorough sentencing decision, defendant's sentence was not a serious injustice warranting our intervention.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-2003-16T4