PER CURIAM
**589 In this case, the State presented strong evidence that defendant Dorian Pressley distributed cocaine. According to the testimony at trial, defendant sold two vials of cocaine directly to an undercover detective on April 30, 2013. At the end of the face-to-face exchange, defendant gave the detective his phone number for future use and told her to store the number in her phone under "D-O-R" -- the first three letters of his name. A second officer observed the transaction through binoculars from about twenty feet away.
Immediately after the sale, the undercover officer transmitted a description of defendant to a supervisor. She relayed that he wore a red baseball hat, a red Adidas warm-up jacket, and khaki pants. The second officer also radioed information about defendant's movements.
About four blocks from where the sale took place, a third officer stopped defendant, who matched the description. The officer realized he knew the suspect-as Dorian Pressley-and let him go to protect *1019 the ongoing undercover operation. Back at headquarters, the third officer printed a photo of defendant.
The undercover detective also returned to headquarters. Within one hour of the transaction, she viewed the single photo of Dorian Pressley and said she was certain that the individual in the picture had sold her the two vials.
Defendant was arrested months later and proceeded to trial. During the trial, the judge conducted a Rule 104 hearing and **590 found that defendant's statements to the undercover agent during the transaction were admissible.
The jury convicted defendant of third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1) ; third-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1) and (b)(3) ; and third-degree distribution of cocaine within 1000 feet of a school, N.J.S.A. 2C:35-7. The first charge related to defendant's possession of heroin at the time of his arrest. Defendant was sentenced to an aggregate term of ten years' imprisonment.
On appeal, defendant argued that the trial court should have held a pretrial hearing to evaluate the reliability of the identification, and that the prosecutor committed misconduct in her summation. The Appellate Division affirmed defendant's conviction. We granted certification. 229 N.J. 609, 164 A.3d 404 (2017). We also granted the Attorney General leave to appear as amicus curiae.
I.
Defendant argues that the trial court should have granted his request for a pretrial hearing, pursuant to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and State v. Henderson, 208 N.J. 208, 27 A.3d 872 (2011), because he made a sufficient showing that the identification procedure used in this case was impermissibly suggestive. He claims that the identification was essentially a showup and that an officer unfamiliar with the investigation should have presented a photo array -- instead of a single picture -- to the undercover detective.
The State and the Attorney General stress that police officers are "trained observers and trained witnesses" whose job requires them to remember details and faces when they conduct an investigation. They contend that when an officer "merely confirm[s] the identity of a suspect she was just investigating," a photo array is unnecessary and no Wade hearing is required.
Counsel for both sides raise an intriguing question: whether an identification made by a law enforcement officer should be tested **591 by the same standards that apply to a civilian. See Henderson, 208 N.J. at 248-72, 287-93, 27 A.3d 872. Defendant claims that "police officers are not more accurate eyewitnesses than civilians." For support, he relies on social science research and cites multiple published studies. The State and the Attorney General, in turn, submit that the risk of undue suggestiveness is remote when a trained officer is involved. They also rely on social science articles, but for the proposition that "police officers are more accurate at remembering details of a crime than" members of the public. Collectively, counsel cite a half dozen publications for the Court's consideration.
We are not aware of case law that has reviewed the social science evidence with care. Defendant points to Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the seminal federal case on identification evidence. Defendant correctly observes that Manson, in part, involved similar facts. One of the identifications in that case related to an undercover officer who bought narcotics from a dealer; two days later, another officer *1020 showed the undercover agent a single photo to try to identify the suspect. Id. at 100-01, 97 S.Ct. 2243. The Supreme Court upheld the identification but noted that, "[o]f course, it would have been better had" the undercover officer been presented "with a photographic array" with "a reasonable number of persons" who looked like the suspect. Id. at 117, 97 S.Ct. 2243.
Implicit in the ruling is a simple concept: identifications by law enforcement officers should be examined to determine if an "impermissibly suggestive" identification procedure was used and to assess whether a defendant has proven "a very substantial likelihood of irreparable misidentification." Henderson, 208 N.J. at 238, 27 A.3d 872 (summarizing federal law); State v. Madison, 109 N.J. 223, 232, 536 A.2d 254 (1988) (same). To be sure, however, the Supreme Court did not address the precise question this appeal presents. Nor did this Court's decision in Henderson.
In 1997, the Appellate Division in State v. Little touched lightly on the issue when it observed that "[t]here can be no dispute that **592 a trained undercover police officer has heightened awareness of the need for proper identification of persons who engage in drug purveyance." 296 N.J. Super. 573, 580, 687 A.2d 344 (App. Div. 1997). The opinion cites no sources and does not analyze any social science evidence. The same is true for the out-of-state decisions that the Attorney General has brought to our attention.
Based on the record before us, we cannot determine whether part or all of the protections outlined in Henderson should apply to identifications made by law enforcement officers. We encourage parties in the future to make a record before the trial court, which can be tested at a hearing by both sides and then assessed on appeal. See State v. Adams, 194 N.J. 186, 201, 943 A.2d 851 (2008) (declining to adopt new standard for admissibility of identification evidence without full record to review); State v. Herrera, 187 N.J. 493, 501, 902 A.2d 177 (2006) (same).
Even if the trial judge in this case had held a pretrial hearing, though, it is difficult to imagine that the identification would have been suppressed. Although showups are inherently suggestive, "the risk of misidentification is not heightened if a showup is conducted" within two hours of an event. Henderson, 208 N.J. at 259, 27 A.3d 872. Here, the identification took place within an hour. In addition, the trial judge gave the jury a full instruction on identification evidence, consistent with Henderson and the model jury charge.
We do not find that the Rule 104 hearing held in this case substituted for a pretrial hearing on the identification evidence. The hearing focused on whether defendant's statements to the undercover officer during the course of the drug sale could be admitted. Although there are some references to the identification process, the hearing did not probe or assess the relevant system and estimator variables.
Nor do we believe that this case involved a "confirmatory" identification, which is not considered suggestive. A confirmatory identification occurs when a witness identifies someone he or she **593 knows from before but cannot identify by name. See, e.g., National Research Council, Identifying the Culprit: Assessing Eyewitness Identification 28 (2014) ("Confirmatory Photograph: Police will, on occasion, display a single photograph to a witness in an effort to confirm the identity of a perpetrator. Police typically limit this method to situations in which the perpetrator is previously known to or acquainted with the witness."); Sides v. Senkowski, 281 F.Supp.2d 649, 654 (W.D.N.Y. 2003) ("parties knew each other previously"). For example, the person may be a neighbor or someone *1021 known only by a street name. See Identifying the Culprit, at 22. Here, the undercover detective first met defendant during the drug transaction.
II.
We briefly address defendant's argument that the prosecutor engaged in misconduct in her summation and deprived him of a fair trial. Defendant first raised the argument on appeal. Because he failed to object at trial, we review the challenged comments for plain error. See R. 2:10-2. Under that standard, an appellate court can reverse only if it finds that the error was "clearly capable of producing an unjust result." Ibid.; State v. Cole, 229 N.J. 430, 458, 163 A.3d 302 (2017).
Prosecutors can sum up cases with force and vigor, and are afforded considerable leeway so long as their comments are "reasonably related to the scope of the evidence presented." State v. Timmendequas, 161 N.J. 515, 587, 737 A.2d 55 (1999). In carrying out their duties, prosecutors must always have in mind that their obligation is to do justice, not to win cases. See Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).
A defendant's allegation of prosecutorial misconduct requires the court to assess whether the defendant was deprived of the right to a fair trial. State v. Jackson, 211 N.J. 394, 407, 48 A.3d 1059 (2012). To warrant reversal on appeal, the prosecutor's misconduct must be "clearly and unmistakably improper" and "so **594 egregious" that it deprived defendant of the "right to have a jury fairly evaluate the merits of his defense." State v. Wakefield, 190 N.J. 397, 437-38, 921 A.2d 954 (2007) (quoting State v. Papasavvas, 163 N.J. 565, 625, 751 A.2d 40 (2000) ). In general, when counsel does not make a timely objection at trial, it is a sign "that defense counsel did not believe the remarks were prejudicial" when they were made. State v. Echols, 199 N.J. 344, 360, 972 A.2d 1091 (2009).
During summation, defense counsel attacked the State's witnesses and argued that "in this case we have some [officers who] are not honest and upstanding." Counsel also commented on the Attorney General's Guidelines for identification procedures and argued that "[t]here's no exception in [them] for police officer witnesses."
In response, the prosecutor argued (a) that the "Guidelines for the most part do address the possible misidentification when there is a lay witness" -- which was not untrue; (b) that the witness was "a law enforcement officer who's trained to do what occurred here today" -- which was also not untrue; and (c) that the officer made a "confirmatory identification." The last comment misstated the law, but it does not appear that the jury received any instruction on the meaning of the term. We do not find that the remark was capable of producing an unjust result -- particularly in light of the overwhelming evidence of defendant's guilt.
III.
We therefore affirm the judgment of the Appellate Division and uphold defendant's convictions.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion.
JUSTICE ALBIN filed a separate, concurring opinion.