**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3626-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DANIEL JOHNSON, a/k/a
LAMAR JOHNSON,

     Defendant-Appellant.

_____

     Submitted January 25, 2019 – Decided May 14, 2019

     Before Judges Simonelli and Whipple.

     On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-11-1900.

     Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

     Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Daniel Johnson, appeals from a February 16, 2018 judgment of conviction for second-degree robbery, N.J.S.A. 2C:15-1, and second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2, after a jury trial on consolidated indictments from Passaic County and Hudson County. We affirm.

At approximately 1:00 a.m. on May 11, 2014, a group of people were gathered outside of a Paterson bar when two black men, one described as having dark skin and the other having lighter skin, approached the group pointing guns at them. Together, the two men robbed the entire group. The same morning, another group of people, including Q.M.,[1] were gathered on Main Avenue in Passaic when two black men, one with dark skin and one with lighter skin, pulled out guns and robbed the group.

Q.M. told the dark-skinned man he had nothing. When Q.M. ran from the scene, he was shot by the dark-skinned man. Q.M. later died from his gunshot wound.

Later that same morning, G.W. was waiting for a bus in Jersey City when he was approached by a dark-skinned man and a light-skinned man on bicycles. The dark-skinned man pointed a gun at G.W. and demanded money. G.W. gave

---

[1] We use initials to protect the privacy of the victims and witnesses.

A-3626-16T3

the man money and his cell phone. After the light-skinned man saw a police car, the men on bikes fled together. G.W. reported the robbery to the police.

A short time later, E.S. was waiting for a friend in Jersey City. Similarly described men on bicycles approached E.S. The dark-skinned man produced a gun and robbed E.S. E.S. reported the robbery to the police. E.S. later identified both defendant and co-defendant Zaire Palms as the men who robbed him.

Jersey City Police Officer Christopher Harrison received a radio report describing the robbery suspects. Harrison observed a black male, later identified as Palms, riding a green bicycle with a black seat, and he gave chase. Palms abandoned the bicycle, ran and jumped over a fence. Police arrested Palms in possession of five cell phones, a phone charger, keys and a quantity of cash.

Detective Sergeant William Hoffman also heard the report, observed the two men on bicycles and gave chase. Hoffman arrested defendant. Jersey City Police Officer Edward Esparra observed Palms drop a gun to the ground; Esparra recovered the gun. Ballistics tests showed shell casings recovered from the crime scene in Paterson were from Palms's pistol.

G.W. said he was robbed by two men at 4:52 a.m. on May 14, 2014. Jersey City Detective Brian Rabbit took a statement from G.W. roughly thirty minutes after the robbery. G.W. described a thin, dark-skinned black man in a black

hooded sweatshirt with a gun and a stocky, light-skinned black man in a black hooded sweatshirt.

While Rabbit was getting ready to prepare his report, he heard a transmission over the police radio that two men on bicycles were apprehended on suspicion of robbery. The descriptions were similar to the descriptions provided by G.W., who was present when the radio transmissions were broadcast. Rabbit did not know if G.W. heard the radio transmissions. G.W. accompanied Rabbit to another police station for a showup identification. There, they sat in a police car and observed defendant and Palms, both handcuffed, walking into the station. This occurred at approximately 6:00 a.m., less than two hours after the robbery. G.W. identified defendant with ninety percent certainty, identified Palms with one hundred percent certainty and identified one of the bicycles ridden during the robbery.

Defendant was charged in a Hudson County indictment with: two counts of first-degree armed robbery, N.J.S.A. 2C:15-1; two counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); two counts of first-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(j); second-degree eluding, N.J.S.A. 2C:29-2(b); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a); fourth-degree obstructing, N.J.S.A. 2C:29-l; second-

degree certain persons not to have a firearm, N.J.S.A. 2C:39-7(b); and second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2.

A Passaic County grand jury returned an indictment that charged defendant with: first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2; five counts of first-degree armed robbery, N.J.S.A. 2C:15-l; five counts of second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5; first-degree murder, N.J.S.A. 2C:11-3(a)(1) or N.J.S.A. 2C:11-3(a)(2); and second-degree certain person not to have a firearm, N.J.S.A. 2C:39-7(b).

The Hudson County charges were transferred to Passaic County for disposition. Defendant was tried over several days between June 10, 2016, to July 28, 2016. Before trial, the judge conducted a Wade[2] hearing regarding G.W.'s and E.S.'s identifications. The trial judge ruled both identifications were admissible.

Two of the Paterson victims and two Jersey City victims, as well as numerous law enforcement witnesses, testified at trial about what happened in the early hours of May 11, 2014. Defendant testified that on May 11, 2014, he

---

[2] United States v. Wade, 388 U.S. 218 (1967).

was with a group that included Palms and they went to a bar and liquor store in Paterson to buy alcohol. When they left the bar and liquor store, defendant got into a car with someone other than Palms, and, as they were pulling away, he heard gunshots but was unaware where Palms was when the gunshots rang out.

Defendant testified that later that night he met Palms in Jersey City, and the two of them rode bicycles together. Defendant testified that while they rode, Palms would stop to talk with people and defendant would wait. Defendant testified he did not see Palms use a gun to rob anyone.

The State produced several letters defendant wrote to an incarcerated inmate, Q.B., which were obtained during an investigation into whether defendant was engaging in witness tampering. The trial court permitted the State to cross-examine defendant with one of the letters to establish consciousness of guilt. The letter referenced one of the victims as "biting the cheese." Defendant testified that he was referring to one of the witnesses being a "snitch."

On July 28, 2016, the jury acquitted defendant on all of the Passaic County charges. On the Hudson County charges, the jury convicted defendant of second-degree robbery of G.W. and second-degree conspiracy to commit the robbery of G.W.

6

On January 6, 2017, the trial judge denied defendant's motions for a judgment of acquittal on the conspiracy charge, to mold the verdict to reflect a third-degree conspiracy, and for a new trial and granted the State's motion for an extended term sentence. The court sentenced defendant to an extended term of sixteen years for the robbery and a concurrent ten years for the conspiracy, both subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. In February 2018, the court amended the judgment of conviction to make the sentence imposed consecutive to a sentence for any parole violation. This appeal followed.

Defendant raises the following issues on appeal:

POINT ONE

THE SHOWUP IDENTIFICATION OF THE DEFENDANT MADE BY [G.W.] WAS IMPERMISSIBLY SUGGESTIVE, AND SHOULD HAVE BEEN EXCLUDED.

POINT TWO

THE TRIAL COURT'S ADMISSION OF LETTERS FROM DEFENDANT TO [Q.B.] ON THE ISSUE OF DEFENDANT'S CONSCIOUSNESS OF GUILT DENIED DEFENDANT A FAIR TRIAL.

POINT THREE

THE TRIAL COURT IMPROPERLY LIMITED DEFENSE COUNSEL'S REDIRECT EXAMINATION OF DEFENDANT ON THE ISSUE OF WITNESS TAMPERING.

A-3626-16T3

POINT FOUR

THE PROSECUTOR'S COMMENTS IN HIS SUMMATION CONSTITUTED MISCONDUCT WHICH DENIED DEFENDANT A FAIR TRIAL.
(Not Raised Below)

POINT FIVE

DEFENDANT'S SENTENCE IS EXCESSIVE AND THE TRIAL COURT SHOULD HAVE MERGED THE CONVICTION FOR CONSPIRACY.

I.

We first address defendant's contention G.W.'s showup identification was impermissibly suggestive. We begin our review by acknowledging the great deference we accord a trial judge's findings regarding the impermissible suggestiveness of the identification procedure. State v. Adams, 194 N.J. 186, 203 (2008).

Under New Jersey law, when a defendant can show evidence of an identification's suggestiveness, the trial court should conduct a hearing where the State must offer proof the identification is reliable. State v. Anthony, __ N.J. __ (2019) (slip op. at 26-27); State v. Henderson, 208 N.J. 208, 288-899 (2011). Here, because the showup identification was inherently suggestive, the judge conducted a hearing where he heard testimony from Rabbit and found his testimony credible.

The judge found, with respect to G.W.'s identification of defendant, there was "no proof that anything was broadcast over the radio that could have influenced [G.W.]." Further, the "show[]up [was] made within two hours of the crime[,]" the victim was possibly focused on the weapon, the victim was not under the influence, the perpetrator was not disguised, G.W. was ninety percent sure of his identification, and G.W.'s description was general but accurate.

Defendant argues the police impermissibly influenced G.W.'s identification. Defendant argues G.W.'s description of the robbers was undetailed, G.W. must have heard the police radio report, and Rabbit told G.W. the suspects matched the description he gave. None of these assertions are supported by the record. G.W.'s description was not especially detailed; however, the judge found it accurately described the defendant. There was no testimony G.W. heard the radio broadcast, despite being in the room with Rabbit. Rather, Rabbit testified he told G.W. he was transporting him to view the suspects.

Defendant also argues the identification runs afoul of the requirements articulated in State v. Delgado, 188 N.J. 48, 63 (2006), that, "as a condition to the admissibility of an out-of-court identification, law enforcement officers make a written record detailing the out-of-court identification procedure,

including the place where the procedure was conducted, the dialogue between the witness and the interlocutor, and the results." We disagree.

Detective Rabbit completed a "Showup Identification Procedures Worksheet" to memorialize the showup with the victim making an identification, but the process was not electronically recorded. Recently, in Anthony, our Supreme Court held law enforcement must make an electronic recording of the identification process, or, if an electronic recording is not feasible, a contemporaneous, verbatim written account must be prepared. (slip op. at 26-27). If law enforcement fails to make an electronic recording or verbatim account, the defendant's remedy is a pretrial hearing regardless of whether the defendant shows suggestiveness in the identification process. Ibid.

Anthony does not modify our analysis or ruling in this case. While the record of the identification procedure in the present case does not comport with the electronic recording requirement of Delgado and Rule 3:11, defendant received the hearing mandated by Anthony. Even so, "the ultimate burden remains on the defendant to prove a very substantial likelihood of irreparable misidentification." Henderson, 208 N.J. at 289.

Following the hearing, the trial judge correctly noted that the risk inherent in a showup can be mitigated if done within two hours of the incident. See State

v. Pressley, 232 N.J. 587, 592 (2018) (quoting Henderson, 208 N.J. at 259) ("Although showups are inherently suggestive, 'the risk of misidentification is not heightened if a showup is conducted' within two hours of an event."). Moreover, the trial judge properly considered the Henderson factors and weighed the evidence, ultimately finding defendant had not demonstrated a substantial likelihood of irreparable misidentification. We discern no abuse of the trial court's discretion in admitting the identification.

## II.

We reject defendant's argument he was denied a fair trial when the Q.B. letter was admitted to show consciousness of guilt. Ordinarily, courts use the Cofield[3] test to determine the admissibility of other crime evidence under Rule 404(b):

> (1) The evidence of the other crime must be admissible as relevant to a material issue;
>
> (2) It must be similar in kind and reasonably close in time to the offense charged;
>
> (3) The evidence of the other crime must be clear and convincing; and
>
> (4) The probative value of the evidence must not be outweighed by its apparent prejudice.

---

[3] State v. Cofield, 127 N.J. 328, 338 (1992).

A-3626-16T3

[Cofield, 127 N.J. at 338.]

Evidentiary rulings are generally reviewed with deference, but our review is plenary where "the trial court did not apply Rule 404(b) properly to the evidence at trial[.]" State v. Rose, 206 N.J. 141, 158 (2011).

Here, the judge did not perform a Cofield analysis but relied on the analysis from a Law Division case, State v. Young, 435 N.J. Super. 434 (Law Div. 2013). The court then allowed the State to cross-examine defendant with the letter to suggest witness tampering. Compounding the error was the lack of a limiting instruction explaining to the jury the permitted and prohibited purposes of the evidence. State v. Williams, 190 N.J. 114, 133-34 (2007). This limiting instruction should be given even if not suggested by defense counsel. State v. Clausell, 121 N.J. 298, 323 (1990). Nonetheless, we consider this harmless error.

Defendant was ultimately acquitted of charges related to the alleged witness tampering. Defendant argues the risk remained that the jury used the witness tampering as inadmissible propensity evidence. However, we do not consider the admission of this evidence sufficient to tip the scales and produce an unjust result under Rule 2:10-2 in light of the fact that the jury acquitted defendant of numerous charges.

A-3626-16T3

We also reject defendant's assertion that the prosecutor's comments in summation constituted misconduct. Summations, like jury instructions, must be read in "the context of the trial as a whole." State v. Morton, 155 N.J. 383, 416 (1998). We do not evaluate a summation in isolation because the State is permitted to respond to allegations made by defense counsel. State v. Engel, 249 N.J. Super. 336, 379-80 (App. Div. 1991).

"Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999). Prosecutors "may comment on facts in the record and draw reasonable inferences from them[.]" State v. Lazo, 209 N.J. 9, 29 (2012). Most importantly, "prosecutors should not make inaccurate legal or factual assertions during a trial[.]" State v. Reddish, 181 N.J. 553, 641 (2004) (quoting State v. Smith, 167 N.J. 158, 178 (2001)). We will not reverse unless the prosecutor's conduct was "so egregious that it deprived the defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 438 (2007) (quoting Smith, 167 N.J. at 181).

Defendant asserts misconduct occurred when the prosecutor referred to the Q.B. letter and suggested defendant got rid of a gun allegedly used in the robberies. Defendant also challenges the use of his prior convictions when

prosecutor said, "[a] guy who's been out on two [first-degree] offenses three months; his own testimony, logic would be, I don't want anything to do with this."

In Engel, we said a prosecutor is permitted to respond in summation to points raised by defendant in summation. 249 N.J. Super. at 379. In summation here, defense counsel stated, "[a]t least from my client's viewpoint, he ain't out trying to rob anybody. He just got out and got a job." As defendant directly referenced his recent release from prison, the prosecutor's response does not warrant reversal.

Moreover, the mention of gun disposal was not so improper that it deprived defendant of a fair trial. Two witnesses testified seeing a gun in defendant's hand during the commission of the robberies. At the time of defendant's arrest, he was not in possession of a gun. The prosecutor was entitled to draw reasonable inferences from the record. See Lazo, 209 N.J. at 29.

Finally, we reject defendant's arguments regarding sentencing. We do not substitute our own judgment for that of the sentencing court. State v. Natale, 184 N.J. 458, 489 (2005). We limit our inquiry to whether the sentencing guidelines were followed, whether there was competent and credible evidence

supporting the application of the guidelines, and whether the sentence shocks the judicial conscience.  Ibid.

Defendant contends the court rejected mitigating factor four, substantial grounds tending to excuse or justify defendant's conduct.  Defendant argues the judge should have considered his history of psychiatric disorders as outlined in the presentence report.  The record demonstrates the judge considered the information and rejected mitigating factor four.  We discern no error justifying reconsideration of defendant's sentence.

Defendant also alleges a Dunbar violation occurred when the sentencing judge did not correctly weigh the aggravating and mitigating factors while setting the base term of the extended sentence but instead focused on defendant's prior criminal history.  State v. Dunbar, 108 N.J. 80, 91-92 (1987).  Our review of the record demonstrates the judge clearly considered the mitigating and aggravating factors when setting the sentence.

We need not address defendant's remaining arguments as these arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3626-16T3