**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3965-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYRONE STEPHENS,

     Defendant-Appellant.

_____

Submitted January 26, 2021 – Decided February 26, 2021

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 16-11-1427.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; John J. Scalati, Legal Assistant, on the brief).

PER CURIAM

Defendant pled guilty to first-degree armed robbery, contrary to N.J.S.A. 2C:15-1(a)(1), and he was sentenced to a seven-year prison term, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals from the judgment of conviction (JOC) dated April 8, 2019. We affirm.

I.

Defendant was charged under Bergen County Indictment No. 16-11-1427 with three counts of first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3(a) (counts one, two, and three); first-degree armed robbery, N.J.S.A. 2C:15-1 (count four); second-degree armed burglary, N.J.S.A. 2C:18-2(a)(1) and 2C:18-2(b)(2) (count five); second-degree conspiracy to commit armed burglary, N.J.S.A. 2C:5-2(a)(1) and 2C:18 2(a)(1) (count seven); third-degree unlawful possession of a shotgun, N.J.S.A. 2C:39-5(c)(1) (count eight); second-degree possession of a shotgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count nine); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count ten); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (count eleven); and three counts of third-degree endangering another person, N.J.S.A. 2C:24-7.1(a)(3) (counts twelve, thirteen, and fourteen). Corey McKay was charged with the same offenses other than counts nine and eleven; and DeShawn L.

Stephens was charged in count fifteen with third-degree witness tampering, N.J.S.A. 2C:28-5(a)(1).

Defendant and McKay thereafter filed a motion seeking a Wade/Henderson[1] hearing to challenge the validity of McKay's photographic identification and to suppress the identification. They also moved to compel disclosure of the identity of a confidential informant; to suppress physical evidence seized at a residence on Rosemont Place in Englewood, and to suppress evidence seized pursuant to a communications data warrant. The judge heard oral argument on January 22, 2019, and on February 4, 2019, entered an order denying the motions for reasons stated in an accompanying written opinion.

On March 1, 2019, defendant pled guilty to count four, charging first-degree armed robbery. On the plea form, defendant reserved his right to appeal the denial of his pre-trial motions. The State agreed the crime would be treated as a second-degree offense for sentencing purposes, and it would recommend a seven-year prison term, subject to NERA, and dismissal of the other charges.

---

[1] United States v. Wade, 388 U.S. 218 (1967); State v. Henderson, 208 N.J. 208 (2011).

On March 29, 2019, the judge sentenced defendant in accordance with his plea and entered the JOC dated April 8, 2019. Defendant's appeal followed. On appeal, defendant raises the following argument:

> THE COURT ERRED IN DENYING A <u>WADE</u> HEARING BECAUSE "SOME EVIDENCE" OF SUGGESTIVENESS IS APPARENT, EVEN ON THIS SPARSE RECORD.

We note that in his brief, defendant presents no argument regarding the judge's denial of his other pre-trial motions. Therefore, any challenge to those determinations is deemed waived. <u>See</u> <u>Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety</u>, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (noting that claims not addressed in merits brief are deemed abandoned); <u>Zavodnick v. Levin</u>, 340 N.J. Super. 94, 103 (App. Div. 2001) (holding that cross-appeal is deemed abandoned where no argument was raised on appeal relating thereto).

## II.

We briefly summarize the facts relevant to defendant's arguments regarding his motion for a <u>Wade</u>/<u>Henderson</u> hearing. On June 2, 2016, at around 11:40 p.m., Detective Lucas Zellvon and other officers from the Englewood Police Department (EPD) responded to a report of gunshots at an apartment on Lafayette Avenue in the city. When Detective Zellvon arrived, he noted that

other officers had gathered the occupants of the apartment, Kaihrique Irick, Willie Irick, and Lorelle Patterson, and had them sitting in the hallway outside the apartment.[2]

They told the police that approximately four or five individuals attempted to force their way into the apartment. Kaihrique and Willie stated that during the struggle, they tried to wrestle a shotgun away from one of the intruders who had pointed the weapon through the open door. At that point, another one of the intruders fired four shots towards the apartment. Kaihrique and Willie then gained control of the shotgun and the intruders ran away.

After giving their initial statements, Kaihrique, Willie, and Lorelle were transported to police headquarters to provide formal statements. Detective Gregory Martin remained at the apartment to assist officers from the Bergen County Sheriff's Department process the scene.

Inside the apartment, the officers observed suspected bullet holes; a baseball cap that allegedly belonged to one of the intruders named "T.J."; a nine-millimeter shell casing and two nine-millimeter rounds; and "loose" drugs and drug paraphernalia. The officers noted that the odor of raw marijuana was not

---

[2] Because some of the persons involved have the same last names, we use their first names in this opinion.

consistent with the amount found in plain view. The officers also recovered security footage from the building, which showed five suspects in the building before, during, and after the attempted break-in.

At police headquarters, the officers informed Kaihrique of his <u>Miranda</u> rights[3] because there was a strong odor of marijuana in the apartment and the officers believed the attempted break-in was drug related. Kaihrique waived his <u>Miranda</u> rights and provided a statement. He stated that he, Willie, and Lorelle were watching a basketball game with some friends. Kaihrique said he was expecting a male who he knew as "T.J." to come over. Kaihrique said he and T.J. had been texting each other all day and T.J was supposed to come to the apartment earlier that evening. He then provided the police with the phone number he had used to communicate with T.J.

Kaihrique said that at some point, he heard a knock on the door. He was not sure, but he thought it was around 11:00 p.m. Willie got up to answer the door and Kaihrique heard him scream, yelling to Kaihrique "come here they are trying to kill me." Kaihrique jumped up and ran to the door. He said he rushed the door and tried to close it, but there was a shotgun sticking in the door

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

preventing it from closing. Kaihrique and Willie tried the wrestle the shotgun away from the intruder. Then, Kaihrique heard a gun go off.

Kaihrique recognized T.J. as one of intruders who tried to force their way into the apartment. Kaihrique heard a second shot and Willie started to scream for Lorelle. Finally, Kaihrique and Willie were able to wrestle the shotgun from the individual who was holding it, after which the intruders ran. Kaihrique closed the door and placed the shotgun in another room of the apartment.

Kaihrique said that, except for T.J., all of the intruders were wearing ski masks. He stated that Willie knocked off T.J.'s hat. He told the detective he had built trust with T.J. over the last few months, and T.J. had been at Kaihrique's apartment on several occasions to smoke marijuana. Kaihrique showed the officers a text conversation he had with T.J., which he had saved.

The officers checked the phone number and determined that it was registered to Corey McKay, Jr. Kaihrique described T.J. and the clothes he had been wearing during the incident. The detective noted that a video recorded by the building's surveillance camera confirmed Kaihrique's description of T.J.'s clothing.

Kaihrique also described T.J.'s physical appearance and said that he could identify him if he was shown a photo. Kaihrique said he knew T.J.'s uncle

A-3965-18

"Shawn," who had been his classmate in grade-school, and he told the police where "Shawn" lived.  The police asked if "Shawn" was DeShawn Stephens, and Kaihrique confirmed that was his full name.

Willie also provided a statement.  He had just gotten off work and was at home watching a basketball game with Kaihrique, Lorelle and a friend.  At some point before the incident, the unnamed friend left the apartment.  Willie said he knew his brother was expecting someone by the name of T.J. to come over.  He heard a knock and went to the door.  He looked out the door's peep hole and realized it was T.J.  He said he recognized T.J. because he had been at the apartment several times before.

Willie opened the door a crack and felt a rush.  He said he could hear several individuals attempting to force the door open.  He could not determine how many individuals were involved.  He called out to Kaihrique for help and stated that "they are trying to kill us."  He stated that Kaihrique ran to the door to help keep it closed.  During the scuffle, T.J.'s hat was knocked off his head.

Willie stated that while they were trying to close the door to the apartment, he saw a shotgun sticking inside the door.  Willie said that he Kaihrique struggled over the shotgun, trying to wrestle it from the intruders.  Willie then heard two gunshots.  He and Kaihrique were able to grab the shotgun, and at that

8

point, all the intruders ran. They put the shotgun and T.J.'s hat in the apartment. The detective noted that the baseball cap and shotgun were sent for DNA testing and a ballistics examination.

Lorelle also provided a statement. She confirmed many of the details that Kaihrique and Willie had provided in their statements. She stated that she heard the struggle at the door and that several shots were fired. She said she was still frantic, and it was hard for her to remember exact details of the incident.

On June 3, 2016, at around 5:00 p.m., Detective Zellvon printed two photographs of McKay and showed them to Kaihrique. After Kaihrique saw the photographs, he positively identified McKay as the person he knew as "T.J." Kaihrique said "T.J." was one of the individuals involved in the attempted break-in and shooting. Thereafter, a Superior Court judge issued warrants for McKay's arrest.

III.

Defendant argues that the trial court erred by denying his request for a Wade/Henderson hearing. He contends the identification procedure utilized by the EPD had sufficient indicia of suggestiveness to warrant an evidentiary hearing on Kaihrique's identification of McKay.

A-3965-18

Defendant asserts that the police only showed Kaihrique two photos of McKay, which is inherently suggestive. He asserts that Detective Zellvon should not have been the officer who showed the photos to Kaihrique because he was actively involved in the investigation. In addition, defendant notes that the police did not create a written record of the identification procedure or make a video recording of the identification.

In New Jersey, for a defendant to be entitled to a Wade/Henderson hearing, the defendant must first "proffer . . . some evidence of impermissible suggestiveness" which could lead to a mistaken identification. Henderson, 208 N.J. at 238 (quoting State v. Rodriguez, 264 N.J. Super. 261, 269 (App. Div. 1993)). If a defendant presents sufficient evidence of impermissible suggestiveness, the court should conduct an evidentiary hearing where the State must offer proof that the proffered eyewitness identification is reliable based on an analysis of several variables. Id. at 288-89.

However, "the ultimate burden remains on the defendant to prove a very substantial likelihood of irreparable misidentification." Id. at 289. The court then determines, based on a totality of the circumstances, whether defendant has met that burden and the court should suppress the identification evidence. Ibid.

Our Supreme Court has noted, however, that a <u>Wade</u>/<u>Henderson</u> hearing is not required for a "confirmatory" identification, "which is not considered suggestive." <u>State v. Pressley</u>, 232 N.J. 587, 592 (2018). "A confirmatory identification occurs when a witness identifies someone he or she knows from before but cannot identify by name." <u>Id.</u> at 592-93 (citing National Research Council, <u>Identifying the Culprit: Assessing Eyewitness Identification</u> 28 (2014)). The Court noted, by way of example, that the person identified "may be a neighbor or someone known only by a street name." <u>Id.</u> at 593 (citing <u>Identifying the Culprit</u>, at 22).

Courts in other jurisdictions also have recognized that "confirmatory" identifications do not present a substantial likelihood of irreparable misidentification. <u>See, e.g.</u>, <u>State v. Greene</u>, 201 A.3d 43, 52 (Md. Ct. Spec. App. 2019) (holding that confirmatory identification "does not generate the myriad risks of misidentification that frequently attend a selective identification made under suggestive circumstances."); <u>Commonwealth v. Crayton</u>, 21 N.E.3d 157, 170 (Mass. 2014) (noting that pretrial hearing not required where eyewitness and the defendant are known to one another); <u>People v. Rodriguez</u>, 593 N.E.2d 268, 272 (N.Y. 1992) (observing that the exception for a "confirmatory identification" is "tantamount to a conclusion that, as a matter of

 A-3965-18

law, the witness is so familiar with the defendant that there is 'little or no risk' that police suggestion could lead to a misidentification.").

Here, the motion judge noted that the detective had shown Kaihrique two photos, both of which were of McKay, and Kaihrique positively identified McKay both times. The judge noted that there were "no fillers" that would have provided Kaihrique a selection of choices. The judge added, however, that

> this is not a case where the victims and Mr. McKay were complete strangers. The [c]ourt cannot ignore the fact that the victims were personally acquainted with Mr. McKay, who was colloquially known as "T[.]J." Previously, the victims have engaged in numerous drug transactions with Mr. McKay and have smoked marijuana with him. To that end, the victims' positive identifications of Mr. McKay were not the first time that they had seen Mr. McKay's face. Further, the identifications were made on two occasions: (1) the first occasion was within [ten] minutes after Mr. McKay was seen at the apartment and minutes after the 911 call; and (2) the second occasion was during the evening after the armed robbery when a single photograph was used at the [EPD]. . . .

The judge concluded that the identifications were not suggestive for purposes of determining whether a Wade/Henderson hearing is warranted. The judge found that, considering the totality of the circumstances, the identification procedures that the EPD used were reliable. The judge noted that the victims were previously acquainted with McKay, having met him on numerous

12

occasions. They knew his street name, and they positively identified him within hours of the incident. The judge found that a <u>Wade</u>/<u>Henderson</u> hearing was not required.

We are convinced there is sufficient evidence in the record to support the judge's findings and his conclusion that Kaihrique's identification of McKay was a "confirmatory identification" that did not present "a substantial likelihood of irreparable misidentification." <u>Henderson</u>, 200 N.J. at 289; Pressley, 232 N.J. at 592. Accordingly, the court did not err by denying defendant's request for an evidentiary hearing on the identification.

We have considered defendant's remaining arguments on this issue. We conclude these arguments lack sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3965-18