**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0194-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRIS E. LEBRON, a/k/a
ERIC LEBRON,

    Defendant-Appellant.

_____

Submitted October 23, 2024 – Decided January 24, 2025

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment Nos. 19-04-0370 and 19-06-0580.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Gilbert G. Miller, Designated Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Chris E. Lebron appeals from the Law Division's July 26, 2022 amended judgment of conviction for two counts of distribution of controlled dangerous substances (CDS).[1]  Specifically, defendant challenges the trial court's March 13, 2022 order denying his motion to suppress witness Ricky Rodriguez's photographic identification of him.  We affirm.

I.

On September 27, 2018, Jeffrey Pindale was found deceased in the basement of his home.  Pindale's death was determined to be caused by the effects of cocaine and fentanyl, with heroin as a contributory cause.

That same night, police observed Rodriguez in his parked car one street over from Pindale's house and arrested him on an outstanding warrant.  During the search of Rodriguez's car, officers found two crack pipes, six needles and wax folds containing a substance later confirmed to be heroin.  Rodriguez was subsequently charged with CDS offenses, arrested and taken into custody.

---

[1]  Although defendant's notice of appeal also lists the July 19, 2022 judgment of conviction for third-degree possession of CDS under indictment number 19-06-00580, his merits brief does not address this conviction and sentence.  Because he did not properly raise any arguments relating to this indictment, we consider them waived.  State v. L.D., 444 N.J. Super. 45, 56 n.7 (App. Div. 2016) ("[A]n issue not briefed is waived.")

2                                                           A-0194-22

While at the police station, Rodriguez overheard one of the arresting officers say Pindale was deceased.

The next day, after Pindale's family told officers Rodriguez had been in the house with Pindale the night before, officers interviewed Rodriguez after administering Miranda[2] warnings. Rodriguez admitted he drove Pindale to purchase what he assumed to be a rock of cocaine, although he did not see the drugs.

Rodriguez denied purchasing drugs for Pindale or seeing him with a bag of heroin the night before. He said that while at Pindale's house, he ate pizza, cut Pindale's hair, and then left. When asked whether he used heroin, Rodriguez indicated he "barely" used and was trying to wean himself off the drug. When detectives asked who his supplier was, Rodriguez did not provide a name and instead, said it was "just some old guy" who was "very secluded," whom he did not want to "rat out."

About two months later, officers arrested Rodriguez on another outstanding warrant and brought him in for further questioning because they believed he had not been truthful during his previous interview. After re-administering Miranda warnings, an officer again questioned Rodriguez about

---

[2] Miranda v. Arizona, 384 U.S 436 (1966).

3

Pindale's death, specifically inquiring about contacts in his phone. Rodriguez identified one phone number as belonging to someone he knew as "Gordie," the "old guy" he referenced in the previous interview, from whom he bought heroin. Rodriguez then identified another of his suppliers as someone he knew as "Brazzy."[3] Rodriguez only knew Brazzy by his street name and social media profile and was unaware of his real name.

At this point, the officer left the interview room for about three minutes and returned with a photograph of defendant. He placed the photo on the table in front of Rodriguez and asked, "Who is that?" to which Rodriguez replied, "That's Brazzy." The officer asked Rodriguez if he was certain that was Brazzy, to which Rodriguez responded affirmatively. The officer then asked, "That's who you bought the crack [from] for [Pindale] that night?" to which Rodriguez answered, "Yeah." Rodriguez did not admit to purchasing heroin for Pindale the night of his death and, at defendant's trial, Rodriguez admitted he was not completely honest during this interview.

---

[3] Defendant's street name, Brazzy, is also referred to as Brazy and Brazie in the record.

A month later, an officer questioned Rodriguez further. This time, the officer did not read Rodriguez Miranda warnings and instead advised Rodriguez he was not under arrest and was free to leave whenever he chose to.

Rodriguez then admitted he purchased blue heroin and crack cocaine from Brazzy and brought it to Pindale's house the night he died. Although at trial Rodriguez testified he also used the heroin, he told police during this interview that he did not. He said Pindale began "messing" with the heroin in the bathroom and it appeared that he ingested it. Rodriguez said he left the house because he did not want to see Pindale use heroin, since the last time Pindale used drugs he had fallen asleep high in Rodriguez's car. Rodriguez said as he left the house, Pindale was heading into the bathroom with the heroin.

On April 24, 2019, a Cumberland County grand jury returned an indictment charging defendant with first-degree strict liability for a drug-induced death, N.J.S.A. 2C:35-9(a); and two counts of third-degree distribution of CDS, N.J.S.A. 2C:35-5(b)(3) and (5).

Prior to trial, defendant filed an omnibus motion seeking, among other relief, suppression of Rodriguez's photographic identification of him. Judge

5

Robert G. Malestein granted defendant's request for a <u>Wade</u>/<u>Henderson</u>[4] hearing and, after hearing testimony, entered an order denying the motion.

In his oral decision, the judge first outlined the framework for a <u>Wade</u>/<u>Henderson</u> hearing. First, "to obtain a pretrial hearing, a defendant has to show and has the initial burden of showing some evidence of suggestiveness that could lead to a mistaken identification." He explained he granted defendant's request for a hearing because "there's always a possibility . . . when [a detective] show[s] just one single photograph to one person, it's suggestive." Once a defendant makes a threshold showing, the State then has "the obligation to offer proof to show that the proffered eyewitness identification is reliable." The burden then shifts to "defendant to prove a very substantial likelihood of irreparable misidentification." If the totality of circumstances demonstrates "a very substantial likelihood of irreparable misidentification, the court should suppress the identification evidence."

The judge then found the identification here was "a confirmatory identification, which . . . is not considered suggestive" under <u>State v. Pressley</u>, 232 N.J. 587, 592-93 (2018). The judge explained "[a] confirmatory

---

[4] <u>United States v. Wade</u>, 388 U.S. 218 (1967); <u>State v. Henderson</u>, 208 N.J. 208 (2011).

A-0194-22

identification occurs when a witness identifies someone he or she knows from before but cannot identify by name, which is precisely what occurred here." Rodriguez provided a street name, which police knew was associated with defendant. An officer retrieved defendant's photograph from their in-house database, showed the photograph to Rodriguez, and asked him who it was. The judge found there was nothing suggestive about this procedure because the police "were just confirming whether or not Brazzy was the person that was pictured . . . , and . . . Rodriguez was able to confirm that that's the person that he was talking about."

Because defendant had not "established a very substantial likelihood of irreparable misidentification," the judge denied the motion to suppress.

A jury trial was conducted on various dates in February and March 2022. The jury acquitted defendant of count one, strict liability for a drug-induced death, but found him guilty of counts two and three, distribution of CDS. On July 7, 2022, defendant entered a guilty plea to possession of CDS on a second unrelated indictment.

On July 19, 2022, defendant was sentenced to four years for each count of distribution of CDS, and three years for possession of CDS, with all counts to run concurrently.

On appeal, defendant raises the following issue for our consideration:

> THE ADMISSION OF RODRIGUEZ'S SHOW-UP PHOTOGRAPHIC IDENTIFICATION OF DEFENDANT VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS UNDER THE FEDERAL AND STATE CONSTITUTIONS.

## II.

In reviewing a grant or denial of a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Lamb, 218 N.J. 300, 313 (2014). Factual findings are accorded deference because they "are substantially influenced by [the trial court's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Therefore, the trial court's findings on the admissibility of identification evidence are "entitled to very considerable weight." State v. Farrow, 61 N.J. 434, 451 (1972). A finding that the identification procedures were reliable should not be disturbed unless it fails the sufficient credible evidence standard of review. State v. Adams, 194 N.J. 186, 203 (2008).

A pretrial identification procedure must comply with the due process clause of the Fourteenth Amendment. Stovall v. Denno, 388 U.S. 293, 302

8

(1967). Accordingly, an identification lineup may not be conducted in a manner "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant is] denied due process of law." Ibid.

A pretrial identification is admissible at trial unless it is the product of suggestive procedures creating a "very substantial likelihood of irreparable misidentification." State v. Madison, 109 N.J. 223, 232 (1988) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).

The purpose of a Wade/Henderson hearing is for the trial court to determine whether an identification procedure created a substantial likelihood of irreparable misidentification, such that the identification was unreliable and should be suppressed at trial. Wade, 388 U.S. at 229-30; Henderson, 208 N.J. at 289.

To establish entitlement to a pretrial Wade/Henderson hearing, "a defendant has the initial burden of showing some evidence of suggestiveness that could lead to a mistaken identification." Henderson, 208 N.J. at 288. The evidence must be tied to some system variable—usually law enforcement conduct—and not an estimator variable. Id. at 288-89. System variables are factors over which the State has control, such as how the array was constructed, the pre-identification instructions given, and the recording of a victim's

A-0194-22

confidence level in the identification before any confirmatory feedback. Id. at 248-61. Estimator variables are factors over which the legal system has no control, such as stress, duration of the witness's observation of the suspect, distance and lighting, and similar factors that could impact the accuracy of the identification. Id. at 261-72. If a defendant fails to show some evidence of suggestiveness tied to a system variable, there is no need to consider estimator variables because evidence of reliability is a fact issue for the jury. Id. at 290-91.

Next, the State must offer proof the eyewitness identification was reliable. Id. at 289. If the State makes that showing, the ultimate burden is "on the defendant to prove a very substantial likelihood of irreparable misidentification." Ibid. In this third part of the test, the court must consider the relevant system and estimator variables to determine whether a defendant has met this burden. Madison, 109 N.J. at 239; Henderson, 208 N.J. at 291.

However, as the judge found here, a confirmatory identification is not considered suggestive. Pressley, 232 N.J. at 592. "A confirmatory identification occurs when a witness identifies someone he or she knows from before but cannot identify by name." Id. at 592-93 (citing Nat'l Research Council, Identifying the Culprit: Assessing Eyewitness Identification 28 (2014)

("Confirmatory Photograph: Police will, on occasion, display a single photograph to a witness in an effort to confirm the identity of a perpetrator. Police typically limit this method to situations in which the perpetrator is previously known to or acquainted with the witness.")). "For example, the person may be . . . someone known only by a street name." Pressley, 232 N.J. at 593 (citing Identifying the Culprit at 22).

We are satisfied the judge's order denying the motion to suppress the confirmatory photograph identification was supported by credible evidence. Rodriguez identified one of his suppliers as Brazzy, whom he did not know by his actual name. Police, aware defendant went by the name Brazzy, showed his photo to Rodriguez and asked the open-ended, non-suggestive question, "Who is that?" to which Rodriguez replied, "That's Brazzy." Nothing in the record here demonstrated any evidence of suggestiveness in the photographic show-up that would have resulted in a substantial likelihood of mistaken identification. Therefore, we discern no abuse of discretion that would warrant disturbing the judge's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-0194-22