# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2617-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

R.W.C.,[1]

    Defendant-Appellant.

_____

Submitted January 21, 2025 – Decided February 24, 2025

Before Judges Sabatino and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 19-05-1217.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Rachel M. Lamb, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to refer to defendant to preserve the privacy of the victim of domestic violence. R. 1:38-3(c)(12).

PER CURIAM

Tried by a jury, defendant R.W.C. was found guilty of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3, and multiple other offenses. The trial court sentenced defendant on the attempted murder conviction to a twenty-year term, subject to an eighty-five-percent parole ineligibility period under the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. The court made sentences on the other counts concurrent to that sentence.

The State's proofs established that defendant had attempted to kill his wife, J.R., by using threats of violence to force her to ingest a bottle of Lexipro, an antidepressant. The forced overdose occurred six days after defendant had learned J.R. was having a relationship with a former boyfriend. Over the six days following his discovery, defendant repeatedly struck and strangled J.R., telling her it was her fault for having an affair.

On the final day, defendant threatened J.R. with a knife and made her consume the Lexipro. Concurrently, defendant swallowed a bottle of Xanax, leaving a suicide note for the couple's children.

Fortunately, the dual overdoses did not kill either J.R. or defendant. J.R. managed to call 9-1-1 and received emergency treatment. She reported what defendant had done to her. X-rays revealed her nose was fractured.

Investigating police concluded that defendant had assaulted J.R. and forced her to ingest the drug overdose.

After defendant was indicted, he coerced J.R. to sign an affidavit retracting her allegations against him and purporting that she had attempted suicide. Although the affidavit failed to sidetrack defendant's continued prosecution, the State did not amend the charges to add a count against him for obstruction of justice.

Both J.R. and defendant testified at trial. J.R. detailed how defendant had assaulted her after discovering the relationship and how he had made her ingest the Lexipro. In his own testimony, defendant claimed that J.R. had swallowed the Lexipro voluntarily and that he ingested the bottle of Xanax pills to kill himself. Various police and medical witnesses also testified.

On appeal, defendant raises the following two arguments for our consideration:

> POINT I
>
> DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BY THE LEAD DETECTIVE'S OPINING THAT COMPLAINANT WAS MORE CREDIBLE THAN DEFENDANT, PARTICULARLY WHERE THAT ERROR WAS COMPOUNDED BY THE PROSECUTOR'S SUMMATON UNDERSCORING THAT IMPROPER TESTIMONY.

3

U.S. Const. amends. V and XIV; N.J. Const. art I, pars. 1, 9, and 10.

POINT II

THE MAXIMUM NERA SENTENCE IMPOSED ON THE ATTEMPTED MURDER CONVICTION SHOULD BE REDUCED BECAUSE IT WAS BASED ON AGGRAVATING FACTORS THAT ARE UNSUPPORTED BY THE RECORD.

Having considered these points in light of the record and the applicable law, we affirm defendant's conviction and sentence.

First, we consider defendant's related arguments concerning lay opinion testimony presented to the jury by the lead investigating police detective and references to that testimony during the State's closing argument.

During his direct examination, the detective explained his reasons for charging defendant with attempted murder rather than treating J.R.'s overdose as an attempted suicide. The pertinent excerpts of his testimony are as follows:

Q. Can you explain to me what led you to charge this Defendant?

A. After speaking with [J.R.] and then looking at the culmination of the evidence we had, between speaking with the detectives that were at the house because, as I said, I never went to the house. Everything that [J.R.] had told me in her statement was able to be proven accurate. She had mentioned about a knife. The knife was there. She had mentioned about a suicide note. That was there. There was money. That was there. Her

4

bruising, her trauma to her body, was there, so that's where we went with the case.

. . . .

Q. Okay. At any point during your investigation, did you conduct it as though it was a suicide on [J.R.]'s part?

A. No.

Q. Tell me why.

A. There was no real indication that she was involved in trying to attempt suicide. She's the one that called for assistance. She's the one that called 911. What she had said to 911 plus what she said to me were very consistent. The note that was left was of the appearance that it was from Mr. [R.W.C.], not from her. She does have three children and it would be extremely odd, in my experience, to have a mother–

At this point, defendant's trial counsel objected to the detective's opinion testimony. The court sustained the objection, directing the State to focus on the facts. Defense counsel did not move to strike the detective's answer. Nor did counsel ask the judge to instruct the jury to disregard the testimony.

Later, on further examination of the detective, the State elicited the following, with no objection from defense counsel:

Q. So, Detective, you did charge this [defendant] with Attempted Murder; correct?

A. That is correct.

5

Q. And in your investigation, you would have had to consider all the facts, also including how [J.R.] fell into this case. Is that correct?

A. That is correct.

. . . .

Q Okay. And back to the charging and speaking about talking to [J.R.], in this situation did her demeanor actually play a role into why you charged?

A. Yes.

Subsequently, during closing argument, the prosecutor referenced the detective's testimony in the following manner:

> [The detective] also explained the process of filing charges and why they were filed so quickly, the same day. As the lead detective, his job is to take in all the evidence, the statements, the physical evidence, everything that all the other police officers carry in.
>
> He looks at that and he sees what the evidence points to. He did not treat this as a suicide. He charged this Defendant straight off the same day.

Defendant argues these portions of the trial were unduly prejudicial to him and improperly allowed the jury to consider the detective's lay opinions about his guilt. To the extent that defense counsel initially objected to the testimony, we evaluate these arguments for reversible error. R. 2:10-2. However, we apply plain error principles to the aspects that did not generate further objection. State

6

v. Macon, 57 N.J. 325, 333 (1971).  In any event, we discern insufficient grounds to grant defendant a new trial based on these alleged errors.

We are mindful that case law under N.J.R.E. 701 makes clear that testifying police officers ordinarily should not convey their subjective lay opinions to juries about the guilt of criminal defendants.  See, e.g., State v. McLean, 205 N.J. 438, 461 (2011); see also State v. Watson, 254 N.J. 558, 604 (2023).  Such lay opinions inherently have the potential to inflame or unduly sway jurors in their own assessment of the facts.  However, the admission of those lay opinions, even if erroneous, does not compel automatic reversal.  See State v. Carlton, 480 N.J. Super. 311, 330 (App. Div. 2024).  Instead, a case-by-case assessment is warranted.  State v. Allen, 254 N.J. 530, 550 (2023).

In the present context, we conclude that the detective's opinion testimony was harmless and did not have the clear capacity to produce an unjust guilty verdict.  R. 2:10-2.  Throughout the trial, defense counsel suggested to the jury that the police in this case had performed a skewed and inadequate investigation and that this situation should have been deemed to be a double attempted suicide by both spouses.  That theme opened the door to allowing the State some leeway to show why the investigation was not biased or incomplete.  See State v. Branch, 182 N.J. 338, 352 (2005).  Additionally, the court promptly sustained

the defense's objection when it was made and was not asked to take other curative measures.

In addition, the other evidence of guilt, particularly the victim's broken nose and other medical proof of the assaults preceding the overdose, as well as defendant's later conduct in getting the victim to sign a recanting affidavit, was so overwhelming that any error concerning the detective's implied opinion should be regarded as harmless. Allen, 254 N.J. at 550.

Further, because defense counsel did not object to the prosecutor's summation, we assume the summation was not deemed to be unduly prejudicial by defense counsel. State v. Pressley, 232 N.J. 587, 594 (2018). Accordingly, we decline to set aside the conviction on this basis.

Second, we reject defendant's arguments respecting his sentence. We must defer to the sentencing judge's discretion in weighing the various aggravating and mitigating factors. State v. Case, 220 N.J. 49, 65 (2014); State v. Fuentes, 217 N.J. 57, 73 (2014). The judge's application of aggravating factor one (especially heinous, depraved or cruel conduct), N.J.S.A. 2C:44-1(a)(1), was justified here, given the infliction of six days of terror upon the victim culminating with a potentially fatal induced overdose. The finding of aggravating factor two (the victim's vulnerability), N.J.S.A. 2C:44-1(a)(2), was

also justified. We discern no abuse of discretion in the twenty-year maximum term imposed. The court showed restraint by declining the State's request for an extended term.

To the extent we have not addressed them, all other arguments raised on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9