**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1872-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THOMAS I. MOORE,

     Defendant-Appellant.

_____

Argued February 24, 2021 – Decided  March 22, 2021

Before Judges Fuentes, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-10-2812.

Susan L. Romeo, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan L. Romeo, of counsel and on the brief).

Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Barbara A. Rosenkrans, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Thomas I. Moore of armed robbery, conspiracy to commit robbery, and related weapons offenses for his involvement in the attempted theft of a man who was never identified. But the crime was witnessed by law enforcement officers who were in the area conducting surveillance of a home on Franklin Avenue in Newark (Franklin home). During the short trial, the State presented the testimony of two detectives who witnessed the crime, and another who arrested defendant when he returned to the Franklin home shortly thereafter. Defendant testified but did not present the testimony of the witnesses named in his alibi notice. Following his convictions, defendant pled guilty to two additional robberies and was thereafter sentenced to an aggregate twenty-five-year prison term. He must serve eighty-five percent of that term under the No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant now appeals, raising the following points for our consideration:

POINT I

DEFENDANT WAS DENIED A FAIR TRIAL BY THE CUMULATIVE EFFECT OF THE PROSECUTOR'S IMPROPER CROSS-EXAMINATION AND ARGUMENTS RELATING TO THE TIMING AND CONTENTS OF DEFENDANT'S NOTICE OF ALIBI AND THE ALLEGEDLY MISSING WITNESSES LISTED THERE.

2

(Not raised below).

[A]. The Prosecutor's Questions And Argument To The Jury Regarding The Notice Of Alibi Violated Defendant's Right To Silence.

[B]. The Prosecutor's Questions And Argument To The Jury Regarding The Notice Of Alibi Witnesses Who Did Not Testify Impermissibly Shifted The Burden Of Proof To Defendant.

[C]. The Prosecutor Committed Gross Misconduct With Summation Comments On The Notice Of Alibi And The Allegedly Missing Witnesses That Denigrated The Defense, Urged Jurors To Render A Decision Based On Personal Emotion And Inconvenience, And Shifted The Burden Of Proof To Defendant.

[D]. The Cumulative Effect Of The Prosecutor's Improper Questioning And Argument Regarding Defendant's Notice Of Alibi And Its Contents Was Plain Error.

POINT II

DEFENDANT'S SENTENCE ON [THE UNLAWFUL POSSESSION OF A WEAPON CONVICTION] MUST BE REVERSED, BECAUSE HIS EIGHT-YEAR SENTENCE WITH A FOUR-YEAR MINIMUM TERM FOR A FOURTH-DEGREE CRIME UNDER N.J.S.A. 2[C]:39-5(d) WAS ILLEGAL, AND BECAUSE THE COURT IMPROPERLY IMPOSED A CONSECUTIVE SENTENCE FOR UNLAWFUL POSSESSION OF A

3

WEAPON, WITH NO FINDING THAT THE CONSECUTIVE SENTENCE WAS WARRANTED UNDER THE YARBOUGH[1] FACTORS.

We reject the belated contentions raised in point I and affirm defendant's convictions. However, we are compelled to remand the matter for resentencing because the trial court: (1) improperly sentenced defendant to serve a term of imprisonment within the second-degree range on his fourth-degree unlawful possession of a weapon conviction; and (2) imposed consecutive terms of imprisonment without conducting the analysis required under Yarbough, 100 N.J. 643-44.

I.

Following a string of robberies that occurred between May 20 and June 4, 2017, defendant was charged in a nineteen-count Essex County indictment with: four counts of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1 (counts one, five, nine, and fifteen); first-degree armed robbery, N.J.S.A. 2C:15-1 (counts two, six, ten, and sixteen); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c)(1) (counts three, seven, eleven, and seventeen); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts four, eight, twelve, and eighteen); fourth-degree

---

[1] State v. Yarbough, 100 N.J. 627 (1985).

aggravated assault, N.J.S.A. 2C:12-1(b)(4) (counts thirteen and fourteen); and third-degree receiving stolen property, N.J.S.A. 2C:20-7(a) (count nineteen). Defendant's sister, Shalina[2] was charged in the same indictment with counts nine through twelve, and nineteen. Shalina's boyfriend, Zachery Hoger, was charged with counts one through eight, fifteen through eighteen, and nineteen.[3]

In September 2018, defendant was tried separately from Hoger on counts fifteen through eighteen, renumbered as counts one through four for trial. We summarize the trial testimony, prosecutor's summation, and jury instruction that are pertinent to defendant's belated assertions of prosecutorial misconduct raised in point I.

Around 9:30 p.m. on June 4, 2017, about one dozen plainclothes detectives in three unmarked police cars established surveillance of the Franklin home in anticipation of "effectuat[ing] a legal process."[4] The Franklin home

---

[2] Because defendant and Shalina share the same surname, we use Shalina's first name to avoid confusion. We intend no disrespect in doing so.

[3] The record on appeal does not indicate the disposition of the charges against Shalina and Hoger; they are not parties to this appeal.

[4] Prior to the commencement of testimony, the trial court granted the prosecutor's application to substitute the term, "legal process" for "search warrant" and to lead the detectives in view of the prior mistrial in that regard. The court denied the prosecutor's application to elicit testimony from the

was located in the Stephen Crane Village housing complex in Newark near the Belleville border. The detectives were assigned to the Newark Police Department, Belleville Police Department, and Essex County Sheriff's Office.[5] At trial, the State presented the testimony of Belleville Police Detectives David Sheridan and Michael Agosta, and Newark Police Detective Philip Turzani.

Sheridan, Turzani and another detective were in a car located directly in front of the Franklin home; Agosta was in another vehicle parked "just south of" the Franklin home. Both Sheridan and Agosta testified that they saw defendant and Hoger exit the front door of the home a few times, look to their left and right on Franklin Avenue, then reenter the Franklin home. When defendant and Hoger came outside the final time, they noticed another man walking southbound on Franklin Avenue. This time, defendant and Hoger reentered the Franklin home and exited through the back door. Detectives stationed in another

---

(continued)
detectives that they had viewed defendant's photograph prior to establishing surveillance. Instead, the court permitted the State "to present testimony through the officers of what they observed that day, what they communicated, [and] what they said to the other officers."

[5] Three departments participated in the search warrant's execution because the affidavit was based on information that defendant and Hoger had committed multiple robberies in Newark and Belleville. That information was not disclosed to the jury, which instead was advised that the crime occurred in Newark on the border of Belleville.

A-1872-18

police car at the rear of the home radioed the others that defendant now appeared to be limping.

Agosta saw defendant "pull[] out a long style rifle from the right side of his pant leg . . . [and] point[] the rifle up at . . . the male that they saw walking originally." Agosta and the other detectives in his car proceeded on foot in their direction. Agosta heard defendant or Hoger tell the unidentified man: "Stop. Give me your shit." Sheridan and Agosta testified they were certain defendant held the weapon; both detectives identified defendant in court.

When the detectives approached defendant and Hoger, defendant "dropped the weapon and then proceeded back northbound into the complex," which is "kind of a maze." Hoger was arrested in the complex. The officers recovered a BB gun at the scene. Defendant was not apprehended until about fifteen to twenty minutes later, when he entered the Franklin home through the back door. At that point, Turzani and other detectives were executing the search warrant at the Franklin home.

Both Sheridan and Turzani testified that defendant was "sweating" and "breathing heavily" when he entered the Franklin home's back door. Sheridan, who wrote the incident report, acknowledged on cross-examination that he did

not include that description in the report. When the detectives asked defendant for his address, he provided the Franklin home's address.

Defendant testified and denied he had been at the Franklin home on June 4, 2017 prior to his arrest. Instead, defendant claimed he was home "all day" at the residence he shared with Adriana Gonzalez and the couple's two children (Peabody home). Defendant asserted that he did not leave the Peabody home until Gonzalez told him to leave following the couple's argument about defendant's ex-girlfriend. Defendant walked "1.7" miles to the Franklin home, where his parents lived with Shalina, Hoger, and defendant's other sister. Arriving at "[a]bout 10:30" p.m., the walk took about "thirty, thirty-five minutes." Defendant denied he was sweating. Defendant asserted he: "was never in the vicinity of [the Franklin home] until after [he] left [the Peabody home]"; "never was in possession of a BB gun"; "never was in the presence of Zachery Hoger"; and "never committed any robberies."

Several weeks before trial, defendant served the State with a notice of alibi pursuant to Rule 3:12-2(a).[6] On cross-examination, after asking defendant about

---

[6] The notice of alibi was not provided on appeal or admitted in evidence at trial. During oral argument before us, we questioned appellate counsel about the contents of the notice. Appellate counsel candidly acknowledged she was unable to obtain a copy of the notice. Accordingly, defendant's merits brief

A-1872-18

his address and relationship with Hoger, the prosecutor established that the alibi notice was dated August 5, 2018. The prosecutor then elicited testimony from defendant that "it took [him] a year and two months to put down in writing where [he] claim[ed he was] on the day of the incident." The prosecutor also asked: "Now, in that document and in your testimony you indicate there were a number of people present [at the] Peabody [home] on the day you were there . . . includ[ing your] girlfriend?" Defendant responded: "My child's [sic] mother, my kids, and her mother." The prosecutor then asked why Gonzalez and her mother were not testifying and defendant responded that they were working. Defense counsel posed no objections to that line of inquiry.

Prior to summations, outside the presence of the jury, the prosecutor stated:

> For the record, it's my understanding in the case law that I am obligated to advise defense counsel prior to my summation that I intend to comment on the fact that there were two alleged witnesses to . . . defendant's alibi testimony, who have not been produced. I am not asking for a [Clawans][7] charge with regard to that. I'm

---

(continued)
relies upon the prosecutor's cross-examination as to the general contents of the notice. We do the same.

[7]  State v. Clawans, 38 N.J. 162 (1962).

merely indicating to the defense and to the court that I intend to comment on the failure of those witnesses to be called. [D]efendant indicated that both of them are at work, indicating that he had knowledge of where they were and they were not produced, and I intend to comment on that upon my summation.

Defense counsel posed no objection and instead replied: "I received the information. I understand that." After verifying that the two witnesses were Gonzalez and her mother, Gladys Valentine, and having heard no objection from the defense, the trial court granted the prosecutor's request.

During his summation, the prosecutor prefaced his remarks about defendant's testimony by telling the jury defendant's "story" was "positively absurd." The prosecutor then commented:

He doesn't have to testify, but once he testifies, you judge him just like you would judge any other witness. According to him, he's with two adults in a house or an apartment, whatever you want to call it, 1.3, whatever it is, miles away and I asked him, "Where are those people, why aren't they here today?" [Defendant replied:] "They're working." Guess what? All of you, but for the fact that you received a notice from the court to be here, would be working today too, if you're not retired. [Defendant's witnesses could have been] subpoenaed, just like you were, to be here, but neither of them came here to verify the fact that he was on . . . whatever the name of that street was, Peabody Street. Neither of them. You didn't hear a word from anyone

10

other than Mr. Moore, that he was in fact at that address.

After recounting the detectives' testimony, and the omission from the police report that defendant was "sweating and breathing heavy," the prosecutor commented:

> That report was written the day of or the day after the incident. Mr. Moore signed his notice of alibi in August of this year. So, the police had no idea at that point that Mr. Moore was going to claim, "I wasn't even there at the time of the robbery." So, the "sweating profusely" and the "heaving beathing" wasn't especially relevant until he finally told us in August of this year, "No guys, you had it all wrong. I wasn't here. I was [at the Peabody home]."

During the final instructions, the trial court closely followed the model jury charge for alibi. Model Jury Charges (Criminal), "Alibi" (rev. May 12, 2008). Pursuant to that charge, the court informed the jury:

> I instructed [sic] that Mr. Moore had no obligation to provide an account of [sic] any time and there may be many reasons for not doing so. You may not use the testimony about when Mr. Moore first came forward to affect his ability [sic] or to conclude that he violated some obligation to come forward, because Mr. Moore had no duty to speak on the subject with anyone.

Defense counsel raised no objections to the prosecutor's summation or final jury charge.

11

II.

A.

For the first time on appeal, defendant contends the prosecutor's cross-examination and closing remarks, individually and cumulatively, "had the clear capacity to bring about an unjust result."  Because defendant did not object at trial, the plain error standard applies.  R. 2:10-2.

Initially, we consider defendant's arguments that the prosecutor impermissibly questioned defendant about the timing of his alibi notice and commented to the jury about that timing.  In State v. Noble, we held a prosecutor's repeated references to timing of the defendant's alibi notice did not violate the defendant's right to remain silent, where the timing was used to highlight inconsistencies between the factual assertions in the notice and the defendant's trial testimony two days later.  398 N.J. Super. 574, 589-90 (App. Div. 2008).  Accordingly, the State may cross-examine a defendant on the late filing of an alibi defense to highlight inconsistencies in his trial testimony, not to "impale" a defendant on the failure to furnish the defense earlier.  Id. at 592. We therefore expect competent prosecutors to refrain from commenting on the timing of defendant's alibi notice in the absence of some inconsistency.

In the present case, defense counsel did not ask defendant who was home with him on the day of the incident. Instead, counsel asked defendant why he left the Peabody home. Defendant responded he had an argument with Gonzalez, who asked him to leave. Defendant did not mention Gonzalez's mother during his direct testimony, but expressly stated Valentine was present at the Peabody home on cross-examination. That question was fair game by the prosecutor. Nonetheless, we discern no inconsistency between defendant's testimony and his alibi notice that would warrant the prosecutor to elicit the date on which defendant signed the notice.

Nor are we convinced by the State's contention that the prosecutor's comment in summation about the timing of defendant's alibi notice sought to explain why the police report did not reflect that defendant was sweating profusely and out of breath when he entered the Franklin home. Notably, the prosecutor did not ask the detective why those details were omitted from his report. In our view, the timing of defendant's alibi had no bearing upon the detective's report. Stated another way, whether police believe a defendant will later assert an alibi defense should not impact the officer's report of the crime. Accordingly, there is no doubt that the prosecutor's cross-examination of

defendant and closing remarks about the timing of defendant's alibi notice violated the proscription we enunciated in Noble.

Despite having reached that conclusion, however, we are satisfied that the prosecutor's errors do not warrant reversal of defendant's convictions. As stated, defense counsel did not object at the time the prosecutor questioned defendant or made the comment in summation. Although the question and remark clearly were improper, they nevertheless were fleeting and not capable of bringing about an unjust result. Crucially, "the prosecutor never argued that defendant's alibi was untrue because he waited so long to furnish it." Noble, 398 N.J. Super. at 591.

Moreover, the trial court properly instructed the jury pursuant to the model charge for alibi that it may not consider defendant's testimony about when he "first came forward," reinforcing defendant "had no duty to speak on the subject with anyone." We presume the jury followed that instruction. State v. Smith, 212 N.J. 365, 409 (2012). We therefore conclude the errors did not have the capacity to compromise the integrity of the trial. See State v. Elkwisni, 190 N.J. 169, 181 (2007).

We turn to the remainder of the prosecutor's closing remarks that defendant now claims were prejudicial. Defendant contends the prosecutor

14                                                                                    A-1872-18

improperly urged the jury "to question the absence of testimony from [his] girlfriend and her mother." He further argues the prosecutor "deliberate[ly] attempt[ed] to inflame [the] jurors against defendant" by commenting that his alibi witnesses were at work, where they would likely be if they had not "received a notice from the court to be here." And defendant claims the prosecutor's remark that "the defense was 'positively absurd' also had no basis in admissible evidence."

Defendant did not object to the comments now challenged, "suggest[ing] that defense counsel did not believe the remarks were prejudicial at the time they were made." State v. Frost, 158 N.J. 76, 84 (1999); see also State v. Pressley, 232 N.J. 587, 594 (2018). "The failure to object also deprive[d] the court of an opportunity to take curative action." Frost, 158 N.J. at 84. "Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." State v. R.B., 183 N.J. 308, 333 (2005) (citation omitted).

Moreover, New Jersey courts have long recognized prosecutors "are afforded considerable leeway in making opening statements and summations." State v. Williams, 113 N.J. 393, 447 (1988). They may even do so "graphically and forcefully." State v. Pratt, 226 N.J. Super. 307, 323 (App. Div. 1988).

"Prosecutors can sum up cases with force and vigor, and are afforded considerable leeway so long as their comments are 'reasonably related to the scope of the evidence presented.'" Pressley, 232 N.J. at 593 (quoting State v. Timmendequas, 161 N.J. 515, 587 (1999)). "[I]f a prosecutor's arguments are based on the facts of the case and reasonable inferences therefrom, what is said in discussing them, 'by way of comment, denunciation or appeal, will afford no ground for reversal.'" State v. Smith, 167 N.J. 158, 178 (2001) (quoting State v. Johnson, 31 N.J. 489, 510 (1960)).

Nonetheless, "the primary duty of a prosecutor is not to obtain convictions but to see that justice is done." Smith, 212 N.J. at 402-03. A prosecutor's "duty is to prove the State's case based on the evidence and not to play on the passions of the jury or trigger emotional flashpoints, deflecting attention from the hard facts on which the State's case must rise or fall." State v. Blakney, 189 N.J. 88, 96 (2006). "A prosecutor must 'conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction,' ensuring that at all times his or her 'remarks and actions [are] consistent with his or her duty to ensure that justice is achieved.'" State v. Jackson, 211 N.J. 394, 408 (2012) (alterations in original) (quoting Williams, 113 N.J. at 447-48).

Even if the prosecutor exceeds the bounds of proper conduct, that finding does not end our inquiry "because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" Smith, 167 N.J. at 181 (quoting Frost, 158 N.J. at 83). "To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Timmendequas, 161 N.J. at 575 (internal quotation marks omitted); see also State v. Nelson, 173 N.J. 417, 460 (2002).

Prior to summations in the present case, the prosecutor properly advised defense counsel and the court of his intention to comment that defendant failed to produce the two witnesses named in his alibi notice and refrained from seeking a Clawans adverse inference charge. See State v. Hill, 199 N.J. 545, 560-61 (2009) (generally disapproving of the use of a Clawans instruction against defendants in a criminal trial but recognizing "[t]he procedure of prior notification is . . . required whenever a party wishes to mention the inference during closing argument"). Defense counsel raised no objection and we discern no error in the prosecutor's comments on the absence of the alibi witnesses at trial.

Defendant's newly-minted objections to the prosecutor's remaining comments require little comment. "It is well settled that prosecutors are not permitted to cast unjustified aspersions on the defense or defense counsel." State v. Rodriguez, 365 N.J. Super. 38, 50 (App. Div. 2003); see also Frost, 158 N.J. at 86. In context, however, the prosecutor's comment that defendant's version of events was "positively absurd," while perhaps better avoided, was not egregious or unfair and did not have the capacity to bring about a result the jury might not otherwise have reached. See Timmendequas, 161 N.J. at 589-90.

After making the remark, the prosecutor commented on defendant's failure to call Gonzalez and Valentine, defendant's relationship with Hoger and the unreliability of defendant's statements that he had not discussed this matter with Hoger while they were locked up on the charges at police headquarters. The prosecutor then discussed the reliability of the detectives' identifications in view of the court's ensuing instructions. To the extent the prosecutor's fleeting remark could be viewed as improper, we conclude it does not rise to plain error. See R. 2:10-2.

Finally, the prosecutor's remark that the alibi witnesses did not testify because they were working, while the jurors were noticed to appear for the trial and unable to attend work, should have been avoided. That analogy could have

been construed as an appeal to the juror's emotions rather than a comment on the evidence or lack thereof. However, having reviewed the prosecutor's comments "within the context of the trial as a whole," State v. Feaster, 156 N.J. 1, 64 (1998), we decline to find reversable error.

We therefore determine none of the assistant prosecutor's remarks warrant reversal because, individually or cumulatively, they were not so egregious to substantially prejudice defendant's right to a fair trial. Timmendequas, 161 N.J. at 575. To the extent not specifically addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

### B.

Pertinent to the issues raised in point II, prior to closing arguments, the trial court amended the indictment based upon the evidence adduced a trial. The court amended count seventeen (renumbered as count three for trial) from third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c)(1), as charged, to N.J.S.A. 2C:39-5(d), a fourth-degree offense; and count eighteen (renumbered as count four for trial), second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), as charged, to N.J.S.A. 2C:39-4(d), a third-degree offense. At sentencing, however, the court imposed an eight-year term of

imprisonment, with a four-year term of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6(c), on count seventeen. After ordering appropriate mergers, the court imposed a consecutive sentence on that conviction, without conducting an analysis under the factors established by our Supreme Court in Yarbough, 100 N.J. at 643-44.

We agree with defendant's contentions that the trial judge incorrectly: imposed sentence on count seventeen within the second-degree range, N.J.S.A. 2C:43-6(a)(2) (fixing the term of imprisonment "between five years and [ten] years"); and failed to conduct a Yarbough analysis. We therefore vacate defendant's sentence on the unlawful possession of a weapon conviction, charged in count seventeen only. On remand the court shall impose sentence on that conviction within the fourth-degree range, N.J.S.A. 2C:43-6(a)(4) (requiring "a specific term" that "shall not exceed [eighteen] months"). The court also shall apply the Yarbough factors in deciding whether to impose to a consecutive sentence on that count.

We disagree, however, with defendant's assertion that the trial court incorrectly determined the Graves Act applies to defendant's unlawful possession of a BB gun conviction under the circumstances presented here. See N.J.S.A. 2C:43-6(c) (mandating the Graves Act disqualifier where the defendant

"while in the course of committing" a robbery "used . . . a firearm" as defined in N.J.S.A. 2C:39-1(f)).  As we recognized in State v. Austin, a BB gun is a firearm within the definition of N.J.S.A. 2C: 39-1(f).  335 N.J. Super. 486, 494 (App. Div. 2000).  We therefore conclude the court correctly determined the Graves Act applies here.

Affirmed in part; vacated and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1872-18