**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3858-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JAMIER GIBSON,
a/k/a JAMIER N. GIBSON,

      Defendant-Appellant.

_____

      Argued January 28, 2026 – Decided May 15, 2026

      Before Judges Gummer, Paganelli, and Jacobs.

      On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 21-03-0672.

      Michael J. Kenney, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Michael J. Kenney, of counsel and on the briefs).

      Lila B. Leonard, Deputy Attorney General, argued the cause for respondent (Jennifer Davenport, Acting Attorney General, attorney; Lila B. Leonard, of counsel and on the brief).

PER CURIAM

Defendant Jamier N. Gibson appeals his convictions and sentence for first-degree robbery and related crimes. He contends the trial court erred by admitting portions of his police interrogation containing alleged inadmissible lay opinion and by permitting the prosecutor to accuse him of an uncharged attempted theft during summation. Defendant also challenges the sentence as excessive. We affirm.

I.

In March 2021, a Camden County grand jury indicted defendant on five counts arising from a September 29, 2020 robbery of Dhahran Muse: first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count three); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (count four); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (count five). The charges stemmed from an incident in which Muse, walking home from work, was approached by defendant, who emerged from behind and asked for directions, then pointed a pistol and demanded Muse's

A-3858-22

wallet and phone. Muse complied and ran away. His wallet contained a Cash App and Apple card. Defendant left the scene in a vehicle.

Muse called 9-1-1 and reported the robbery. Police responded, and Detective Jake Siegfried became the primary investigator. Surveillance video from the area showed the suspect's vehicle, leading to a motor-vehicle stop of defendant. Muse's cell phone was found in defendant's vehicle. Muse also received a Cash App request for $250 from defendant's wife minutes after the robbery.

Defendant was arrested and interrogated. He denied robbing Muse, instead claiming Muse stole drugs from him in a failed drug deal. During interrogation, Siegfried and another detective told defendant the surveillance video contradicted his account, though the video did not actually show the robbery or that it visually contradicted defendant's account. At trial, Siegfried acknowledged he had lied to defendant as an interrogation technique.

Before trial, the judge conducted a Miranda[1] hearing and found defendant's statement was voluntary. The judge and parties agreed to redact portions of the interrogation video, including references to defendant's social security number and prior criminal history. However, defense counsel did not

_____

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-3858-22

request the redaction of the detectives' statements accusing defendant of lying or mentioning the surveillance video, nor did the judge independently order those portions redacted.

At trial, the jury viewed the surveillance and interrogation videos. Muse testified to the robbery and the Cash App request. The State introduced evidence of the Cash App request. The jury found defendant guilty on the first four counts, and the State dismissed the remaining charge.

At sentencing, the judge denied the State's request for an extended term. The judge then merged convictions on counts three and four with the conviction on count one and imposed a twenty-year imprisonment term with an eighty-five percent parole disqualifier pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. On count two, the court imposed a concurrent ten-year term with a five-year parole disqualifier. In imposing sentence, the judge detailed defendant's criminal history and found aggravating factors three (risk of re-offense), N.J.S.A. 2C:44-1(a)(3); six (extent of prior record), N.J.S.A. 2C:44-1(a)(6); and nine (need for deterrence), N.J.S.A. 2C:44-1(a)(9). The judge found no mitigating factors.

On appeal, defendant raises the following points:

A-3858-22

POINT I

THE COURT FAILED TO REDACT PORTIONS OF GIBSON'S RECORDED INTERROGATION THAT INCLUDED INADMISSIBLE LAY OPINION OF DETECTIVES. (Not raised below.)

POINT II

THE STATE IMPROPERLY ACCUSED GIBSON OF AN UNCHARGED ATTEMPTED THEFT DURING SUMMATION DESPITE NO FACTS IN EVIDENCE SUPPORTING THE ACCUSATION. (Not raised below.)

POINT III

THE COURT ERRED IN CONSIDERATION OF THE AGGRAVATING AND MITIGATING FACTORS RESULTING IN AN EXCESSIVE SENTENCE.

II.

Because defendant did not object to the admission of the challenged statements or the prosecutor's summation at trial, we review under the plain error standard of Rule 2:10-2. State v. Singh, 245 N.J. 1, 13 (2021). Plain error must be "clearly capable of producing an unjust result." Ibid. (quoting R. 2:10-2). "The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016). "In the context of a jury trial, the possibility must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. G.E.P., 243 N.J. 362, 389-

5

90 (2020) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

Interrogation Video

At the outset, we emphasize the distinction between a witness's contemporaneous narration of a video shown to the jury and recorded statements. Here, the issue concerns recorded statements presented to the jury in the form of an interrogation recording. Thus, our focus is distinct from Singh, where the Supreme Court "consider[ed] whether it was plain error for the trial court to allow the detective to make two references to 'the defendant' in narrating the surveillance footage of a robbery for the jury" under N.J.R.E. 701. 245 N.J. at 4.

Instead, we must determine if the interrogation played before the jury satisfies the strictures of N.J.R.E. 701:

> If a witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences may be admitted if it:
>
> (a) is rationally based on the witness'[s] perception; and
>
> (b) will assist in understanding the witness'[s] testimony or determining a fact in issue.

Defendant asserts, pursuant to N.J.R.E. 701, an officer may not offer lay opinion testimony regarding credibility of another witness. He argues "the court erred by failing to redact lay opinion statements by detectives assessing [his]

6

credibility."  Because "[t]he detectives would not have been permitted to testify at trial regarding these opinions[,]" the statements should have been redacted from the video.  Defendant further argues the statements should have been excluded under N.J.R.E. 403 in that their probative value was substantially outweighed by the risk of undue prejudice.  We disagree.

The record shows the court and parties conducted a line-by-line review of the interrogation transcript.  Defendant originally objected to a statement by Detective Siegfried, "[b]ut listen, we don't just sit here and we don't just bring you up here for no reason."  When asked to explain his reasoning, counsel said:

> [DEFENSE COUNSEL]:  . . . Your Honor, I think it's a [Rule] 403 argument that . . . it doesn't really offer very much of probative value but rather it sort of intimates the idea that . . . there is reason to believe that he's guilty of what the police suspect him to be involved with.
>
> There's sort of a presumption if we don't bring you here for any reason[,] they must have some good reason.
>
> THE COURT:  But they go on and say, "We don't just -- do you know?  Everything has a purpose and you're here for a reason."  He goes, "Right.  Okay.  All right."
>
> [DEFENSE COUNSEL]:  Yes, Judge.
>
> THE COURT:  "So we see you get out of a car," [th]at all goes into the reason why the officer says, "We're interviewing [Muse]."  I don't see any –

A-3858-22

[DEFENSE COUNSEL]: We can withdraw that [objection].

Defense counsel limited his substantive objections to portions of the statement concerning comments defendant made about his father:

THE COURT: . . . [Counsel] need[s] to draft and provide to the [c]ourt . . . what is it that you want the [c]ourt to read to the jury regarding those statements [made during the interrogation].

So on page 19 he gets specific and he makes contact with this person on lines 11 . . . on down. He start[s] talking like you, what you got man, I got dimes and -- so this is when he starts talking about it.

But throughout the statement he talks about he was selling these drugs and that the person robbed him of his drugs. It's a drug deal that went bad. <u>And again, I'm making my record. No redactions are being sought regarding any of that but with limiting instructions for the jury, correct?</u>

[DEFENSE COUNSEL]: <u>That's correct, Judge.</u>

THE COURT: Okay. In reference to these pages starting on page 6.

Okay. What's being sought to be redacted is . . . defendant stating, "I'm willing to give my Pop's up right now, bird and walk the f[*]ck out of here, bro."

. . . .

And then on page 29 he says, "Now and I understand . . . that you all are not drug cops. What I'm telling you here is you heard . . . these names, the name

8

that I give you, my father's name. Uh-huh. (Inaudible). Yeah. He's a big dog. He's a big man. Okay. Listen, I get you. We're talking about big dog like I'm going to work with you all . . . like I don't -- like this sh[*]t right here."

[(Emphases added).]

The judge permitted defendant's proposed redactions over the State's objection. Beyond challenging admission of the statement as a whole, defense counsel did not renew his objection to admission of the detectives' statements now at issue. This signaled a strategic choice by defense counsel to capitalize on the detectives' blatant deception and defendant's persistent claims of innocence. See State v. Timmendequas, 161 N.J. 515, 576 (1999) ("Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial.") (citing State v. Ramseur, 106 N.J. 123, 323 (1987)). Failure to make a timely objection indicates defense counsel did not believe the remarks were prejudicial at the time they were made. State v. Irving, 114 N.J. 427, 444 (1989) (citing State v. Johnson, 31 N.J. 489, 511 (1960)).

Counsel implemented this strategy on cross-examination:

[DEFENSE COUNSEL]: And he said, "I don't know what you want. I told you the truth," or something to that effect, is that – [?]

[DETECTIVE SIEGFRIED]: Yes.

A-3858-22

[DEFENSE COUNSEL]: And in reality you didn't have any evidence that he wasn't telling you the truth[,] right?

[DETECTIVE SIEGFRIED]: On video, yes.

[DEFENSE COUNSEL]: Okay. All that you had was a statement from the so-called victim[?]

[DETECTIVE SIEGFRIED]: Yes.

The jury thus knew the detectives' accusations of visual corroboration were not true. The jury also viewed the video, which did not show the robbery or contradict defendant's rendition.

In summation, defense counsel highlighted defendant's conduct under interrogation.

> Now, [defendant] is sitting there in that police station. He hadn't seen the video. He doesn't know what's on it. Still, as the police continue to lie to him and tell him that his story was not what they see happening in the video, he may as well tell them the truth.
>
> He never waivered. He never flinched from the truth. He asked them what did they see in this video and challenges them to go get that video right now so they could all see it in the room together because he mistakenly believed that the video would show what really happened and it would clear his name.
>
> But it doesn't. After a fairly long interrogation with his story of a drug deal gone bad never changed,

. . . and under continued police urgings to help himself and to come clean and confess[, defendant] stuck to his guns . . . .

In the final charge, the trial court instructed the jury, "[y]ou and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses, and the weight to be attached to the testimony of each witness." Regarding defendant's recorded statements, the judge instructed, "[i]t is your function to determine whether or not the statements were actually made by . . . defendant and if made, whether the statements or any portion of them are credible." We are satisfied no additional limiting instruction was requested or warranted. See State v. Krivacska, 341 N.J. Super. 1, 43-44 (App. Div. 2001) (finding a counsel's decision not to request a limiting instruction can be a "well reasoned strategic determination").

When a defendant fails to raise an issue before the trial court, that defendant "'bears the burden of establishing that the trial court's actions constituted plain error' because 'to rerun a trial when the error could easily have been cured on request[] would reward the litigant who suffers an error for tactical advantage either in the trial or on appeal.'" State v. Santamaria, 236 N.J. 390, 404-05 (2019) (alteration in original) (quoting State v. Ross, 229 N.J. 389, 407 (2017)). From this record we are satisfied there was no error in admission

11

of the detectives' statements as redacted.

Even if their admission was improper, it was not "clearly capable of producing an unjust result." R. 2:10-2. The jury was aware the detectives lied to defendant. Defense counsel emphasized this point and attempted to use it to his advantage. In the end, the evidence against defendant was strong. Aside from Muse's testimony, Muse's phone was found in defendant's vehicle, the vehicle was identified in surveillance footage, and defendant's wife sent a Cash App request to Muse minutes after the robbery.

Prosecutor's Summation

Defendant claims prosecutorial misconduct, asserting that during summation, the prosecutor accused defendant of having committed an uncharged attempted theft. Again, because there was no objection at trial, we review for plain error.

During summation, prosecutor stated:

> Next, what is consistent? How can we confirm that [Muse]'s wallet was in fact stolen? Because of the attempted [C]ash [A]pp transfer which is[,] I believe[,] S-8 in evidence. As you heard [Muse] explain, Cash App is a phone application to transfer money, but he also had a [C]ash [A]pp card which . . . as I explained[,] is used just like a debit card.
>
> We know that . . . defendant had [Muse]'s wallet because he couldn't have used the [C]ash [A]pp phone

application because [Muse]'s phone was locked. Nobody could access it but [Muse]. The only other option was to use the [C]ash [A]pp card inside . . . the wallet that was stolen.

A conviction may be reversed based on prosecutorial misconduct only where the misconduct is "so egregious" in the context of the trial as a whole as to deprive the defendant of a fair trial. State v. Pressley, 232 N.J. 587, 593-94 (2018) (quoting State v. Wakefield, 190 N.J. 397, 437-38 (2007)). In making this assessment, the court must "consider the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred." Timmendequas, 161 N.J. at 575. Where defense counsel fails to object at trial to the alleged prosecutorial misconduct, it suggests "defense counsel did not believe the remarks were prejudicial at the time they were made." Id. at 576.

At trial, defense counsel did not object to the prosecutor's remarks, and so we infer counsel did not consider the remarks to be inappropriate. Moreover, the prosecutor's comments were based on evidence that defendant's wife sent a Cash App request to Muse minutes after the robbery, using information from Muse's stolen wallet. The prosecutor fairly argued that evidence supported an inference defendant had stolen Muse's wallet. The comments were not focused on an accusation defendant committed a separate, uncharged crime. Rather, they

were directed to linking defendant to Muse's wallet. The evidence establishing that link was especially vital as Muse's wallet was never recovered. It also confirmed there was more to the interaction between defendant and Muse than a mere "drug deal gone bad." In sum, the prosecutor's statement was a fair comment on the evidence and not clearly capable of producing an unjust result.

Sentencing

N.J.S.A. 2C:44-7 provides:

> Any action taken by the court in imposing sentence shall be subject to review by an appellate court. The court shall specifically have the authority to review findings of fact by the sentencing court in support of its findings of aggravating and mitigating circumstances and to modify the defendant's sentence upon his application where such findings are not fairly supported on the record before the trial court.

We review sentencing decisions for abuse of discretion. State v. Jones, 232 N.J. 308, 318 (2018). We affirm "unless . . . the sentencing guidelines were violated[,]" the findings of aggravating and mitigating factors "were not based upon competent credible evidence[,]" or the sentence "shock[s] the judicial conscience." State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

The deferential standard of review applies, however, "only if the trial judge follows the Code and the basic precepts that channel sentencing

14

discretion." State v. Trinidad, 241 N.J. 425, 453 (2020) (quoting State v. Case, 220 N.J. 49, 65 (2014)).

Defendant contends the court failed to provide a sufficient basis to support its findings of aggravating factors three and nine. He further asserts the sentence was excessive and inadequately explained. Our review of the record shows the contrary. The judge carefully considered the aggravating and mitigating factors, detailed defendant's criminal history, and explained her reasoning. The sentence imposed was within the statutory range and does not shock the judicial conscience.

In weighing the factors, the judge mentioned defendant is the father of four young children his mother helps raise. The judge observed defendant was fortunate in that respect, in that "I've seen so many people in my courtroom that come by themselves with no mother, no father, no sister, no brother, not even a friend." The judge stated that notwithstanding this support, it "still wasn't enough for him to not have contact with the law."

Defendant argues the judge "inappropriate[ly]" used defendant's family circumstances against him, "plac[ing defendant] in a worse position at sentencing." He argues "having a family does not make [defendant] either more

likely to reoffend under aggravating factor three or increase the need for deterrence under aggravating factor nine."

We do not construe the judge's remarks to constitute an "inappropriate consideration of [defendant]'s family status." Rather, we see the judge's observation as a generalized lament based on her extensive courtroom experience, nothing more.

Lastly, we note the judge exercised discretion in defendant's favor, rejecting the State's application for an extended-term sentence. Thus, in declining to impose an extended-term sentence and sentencing defendant within the statutory framework, we are satisfied there was no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3858-22